Nicole M. Goodwin (SBN 024593)
Aaron T. Lloyd (SBN 027987)
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Tel: (602) 445-8000
Facsimile: (602) 445-8100
goodwinn@gtlaw.com
lloyda@gtlaw.com

Lori G. Cohen *(pro hac vice)*
Brandon D. Cox *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
cohenl@gtlaw.com
coxb@gtlaw.com

Mary-Olga Lovett *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
lovettm@gtlaw.com

*Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' MOTION TO STRIKE THE JUNE 7, 2021 SUPPLEMENTAL EXPERT REPORT AND JULY 16, 2021 REBUTTAL EXPERT REPORT OF ALISON VREDENBURGH, PHD, CPE** |

Defendants Mattel, Inc. and Fisher-Price, Inc., (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 37(c)(1) and the Court's July 9, 2021 minute entry, move to strike the June 7, 2021 Supplemental Expert

Report and July 16, 2021 Rebuttal Expert Report of Plaintiff's expert witness, Alison Vredenburgh, Ph.D., CPE.[1]

## INTRODUCTION

Plaintiff's deadline to serve reports setting forth all opinions of her retained experts was April 2, 2021. The Court's case management order made clear no new opinions could be offered in later filed rebuttal reports, limiting rebuttal reports "to **responding** to opinions stated by initial experts." (Dkt. 34) (emphasis added). The supplemental and rebuttal reports submitted by Plaintiff's human factors expert, Dr. Alison Vredenburgh, flagrantly ignore this limitation in two ways.

*First*, Dr. Vredenburgh's supplemental and rebuttal reports include brand new opinions that could have (and should have) been offered in her initial report but were not. For example, Dr. Vredenburgh's supplemental report includes—for the first time— proposed text of a warning label she claims should have been used on the Rock 'n Play Sleeper, as well as photographs showing the location on the product she believes the warning should have appeared. This proposed text and accompanying photographs were not included in her initial report. Of course, nothing prevented Dr. Vredenburgh from including these opinions in her initial report, and these new opinions are not simply a "respon[se] to opinions stated by" Defendants' experts. As discussed more fully below, Dr. Vredenburgh's rebuttal report includes other additional new opinions, such as certain analysis and testing she believes Defendants should have undertaken. All these new opinions should be stricken as contrary to Rule 26 and the Court's case management order.

---

[1] Under the Court's Scheduling Order, Defendants' sur-rebuttal reports are due on July 30, 2021—the same day as Defendants' deadline to file a Motion to Strike as to Dr. Vredenburgh. While several of Defendants' experts intend to address Dr. Vredenburgh's supplemental and rebuttal reports in their sur-rebuttal reports given the July 30, 2021 deadlines, by doing so Defendants do not waive, and expressly preserve, all arguments in their Motion to Strike and Memorandum of Law in Support of Their Motion to Strike regarding Dr. Vredenburgh's supplemental and rebuttal reports.

*Second*, before submitting her rebuttal report, Dr. Vredenburgh conducted "interviews" of the Plaintiffs, on which she then relies to form opinions about the adequacy of the warnings appearing on the Rock 'n Play Sleeper. These interviews are improper and attempt to contradict the sworn testimony given by Plaintiffs at their depositions, in essence trying to rehabilitate them on answers that are bad for their case—namely, that they indisputably read, fully understood, and were familiar with the warnings on the Rock 'n Play Sleeper, and chose to ignore them. It is completely inappropriate for an expert to attempt to change sworn testimony via unsworn, informal "interviews" at any time, and even more so in a rebuttal report. Dr. Vredenburgh's opinions must be based on the actual record in the case, not a record she creates after the fact. Accordingly, and for this independent reason, Dr. Vredenburgh's rebuttal report should be stricken.

**RELEVANT FACTS**

**I.     The Court's Orders Regarding Expert Disclosures**

On October 25, 2019, the Court entered the initial case management order for this case. (Dkt. 34). Pertinently, this Order provided that "Plaintiff(s) shall provide full and complete expert disclosures, as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure, no later than September 4, 2020." (*Id.*). The Order also provided a deadline for Defendants to serve expert disclosures pursuant to Rule 26 and further stated "Rebuttal expert disclosures, if any, shall be made no later than November 20, 2020. Rebuttal experts shall be limited to **responding** to opinions stated by initial experts." (*Id.*) (emphasis added). This explicitly precludes experts from offering new opinions in their rebuttal reports.

After significant fact discovery, the Court extended the above deadlines and most recently entered an amended scheduling order that gave Plaintiff until April 2, 2021, to serve expert reports and Defendants until May 7, 2021, to serve expert reports. (Dkt. 120). The Order further extended Plaintiff's deadline to provide rebuttal reports until June 18, 2021. (*Id.*). The rebuttal deadline was later extended to July 16, 2021, pursuant to

Plaintiff's unopposed motion, which also gave Defendants a deadline to serve sur-rebuttal reports by July 30, 2021. (Dkt. 145, 148).

## II. Plaintiff's Initial Expert Disclosure of Dr. Vredenburgh

On April 2, 2021, Plaintiff disclosed her initial expert reports, which included a report from Dr. Alison Vredenburgh. (April 2, 2021 Report of Dr. Vredenburgh, attached as **Exhibit 1**). Dr. Vredenburgh is disclosed as an ergonomist and human factors expert and offers opinions about the Rock 'n Play Sleeper's warning label (among other human factors opinions) and concludes the warning label on the Rock 'n Play Sleeper was not adequate. Critically, however, Dr. Vredenburgh never prepared or included any alternative warnings in her original report like she does in her supplemental and rebuttal reports, as discussed below.

## III. Defendants' Expert Disclosures

On May 7, 2021, Defendants served seven expert reports, including reports from Steve Arndt, Ph.D., C.H.F.P. ("Dr. Arndt") and Dorothy Drago, M.A., M.P.H. ("Ms. Drago"). Dr. Arndt is a certified human factors professional and offers opinions on topics similar to Dr. Vredenburgh. (May 7, 2021 Expert Report of Dr. Arndt, pp. 11, 15, 31, 64-66, attached as **Exhibit 2**). Ms. Drago is an expert who specializes in CPSC regulations and standards and offers opinions on how the product's warning label complied with regulatory standards (among other opinions not relevant to this Motion).

As to Dr. Vredenburgh's opinions about the warning label on the Rock 'n Play Sleeper, Dr. Arndt concluded the warning was sufficient for the safe use of the product and that the warning label does not need to be visible from the front of the Rock 'n Play Sleeper for it to be conspicuous within the meaning of regulatory standards. (*Id.* at 11, 70). He further opined that Plaintiffs' deposition testimony conclusively shows the warning label was sufficient and conspicuous because both parents noticed it, read it, understood it, and were familiar with it:

> Q. And you had seen warnings before; correct?
>
> A. Yeah.

4

* * *

Q. And it says at the top failure to follow these warnings and the instructions to result in serious injury or death and you had seen that part; right?

A. Yes.

Q. And it says number one, always use restraint system. Do you see that?

A. Yes.

* * *

Q. And you understood that it was absolutely important to use the restraint system; right?

A. Yes.

(K. Courkamp Dep. Transcript, at 101-02, **Exhibit 3**).

Q. Of course, you said you were familiar with the warnings and you were constantly checking them against Zoey's developmental age; right?

A. Right.

* * *

Q. So, for example, it says always use the restraint system in all caps; correct?

A. Yes.

Q. And there aren't any -- it just says always use the restraint system; correct?

A. Yes.

Q. And you knew that it was important to always use the restraint systems; right?

A. Yes.

Q. And you understood the restraint systems to be the buckle the crotch restraint which buckled around the baby's waste; correct?

    A. Yes.

(A. Olson Dep. Transcript, at 194-95, **Exhibit 4**).

  Ms. Drago opined that, by using the developmental milestone "pushing up on hands and knees," Defendants' warning "subsumes" warning against the more advanced developmental milestone of rolling over. (May 7, 2021 Report of Ms. Drago, p. 24, **Exhibit 5**). Thus, even though the word "rollover" was not specifically referenced in the warning, the warning label accounted for it anyway. Ms. Drago also discussed Dr. Vredenburgh's opinion about Defendants' failure to specify "age of use" on the warning label of the product by explaining Fisher-Price's standard procedure is to include "developmental level[s]" for juvenile products, instead of age. (*Id.*) This approach was reasonable because children of the same age often reach very different developmental milestones.

**IV.** **Dr. Vredenburgh's June 7, 2021 Supplemental Expert Report**

  On June 7, 2021, Plaintiff served a "supplemental expert report" of Dr. Vredenburgh. (*See* June 7, 2021 Supplemental Expert Report of Dr. Vredenburgh, **Exhibit 6**). In this supplemental report, Dr. Vredenburgh offers **new** opinions not included in her original report—namely, she proposed and included warning labels for the Rock 'n Play Sleeper that she believes would have been more adequate as to content and location. (*Id.* at 1). She opined—for the first time—that the warning label should have included the sentences "Babies have <u>suffocated</u> and <u>died</u> from **rolling over** on added pillows, blankets, and extra padding in inclined sleep products[;]" and "Babies have suffocated and **died** from **rolling over** in inclined sleep products." (*Id.*) (emphasis in original). She also opined that the warning label should have advised parents to stop using the product "when the baby reaches <u>5 months</u>." (*Id.*) (emphasis in original). She further included pictures of where she believes the warning should have been located on the product to make it more conspicuous to users.

  Neither the proposed warnings nor the photographs about the location of the warning was included in her original report, and Dr. Vredenburgh provided no

6

justification as to why these new opinions could not have been included in her original report. The only claimed justification was that her supplemental report was based on an "inspection of the exemplar Fisher Price Rock 'n Play inclined sleeper" and review of "additional material," including the following three documents:

1. Drago ballot 04/29/19 for F15 (MATTEL-COU0839240-839242);
2. Email Chain (MATTEL-COU1149138); and
3. Rollover Hazard Visibility Test (MATTEL-COU0843402).

All these documents were available to Dr. Vredenburgh **before** she prepared her original report. The Drago ballot (item 1 above) was produced in this case on October 30, 2020, over five months before Plaintiff's original expert report deadline. The email chain involving Michael Steinwachs (item 2 above) was produced on March 6, 2021 (Bates MATTEL-COU-1088542), a month before Plaintiff's expert disclosure deadline.[2] The rollover visibility test (item 3 above) was produced on February 10, 2021, nearly two months before Plaintiff's original expert report deadline. As to the inspection of the exemplar Rock 'n Play Sleeper, Dr. Vredenburgh's April 2, 2021 reliance list specifically states she examined both an exemplar Rock 'n Play Sleeper and the subject Rock 'n Play Sleeper, confirming these were also available to her **before** she prepared her original report. (**Ex. 1** at 44).

### V. Dr. Vredenburgh's July 16, 2021 Rebuttal Expert Report

On July 16, 2021, Dr. Vredenburgh provided a "rebuttal report." (*See* July 16, 2021 Rebuttal Report of Dr. Vredenburgh, **Exhibit 7**). While this report purports to rebut opinions by Dr. Arndt and Ms. Drago, it actually contains several **new** opinions that were not in her original report, including: (1) an opinion about differentiating between "notice" and "evidence" of a hazardous condition (**Ex. 7** at 1-4); (2) an opinion about the alleged failure of Fisher-Price to conduct "FMEA and testing" (*Id.* at 4-6); and (3) alternative

---

[2] The e-mail to which Dr. Vredenburgh cites (Bates COU1149138, produced on May 7, 2021) includes a duplicative version of the Michael Steinwachs e-mail that was previously produced on March 6, 2021, and is the only portion of this e-mail chain on which Dr. Vredenburgh relies.

7

warnings opinions based on recent "interviews" with Plaintiffs in which Dr. Vredenburgh improperly seeks to change their sworn deposition testimony (*Id.* at 6-19; *see also* COU_009047, **Exhibit 8**; COU_009050, **Exhibit 9**). In direct contradiction to their deposition testimony, Plaintiffs now claim—8 months after their depositions—that they did not fully understand the warnings and would have acted differently had the Rock 'n Play Sleeper included the warnings proposed by Dr. Vredenburgh. (**Ex. 7**, Dr., Vredenburgh's Rebuttal Report, at COU_009047 ("Interview with Andrew Olson") and COU_009050 ("Interview with Katie Courkamp")). Specifically, they state in their "interviews" that they did not think the statements on the subject product under "fall hazard" applied to the possibility of suffocation, and that they would not have purchased the product or stopped using it if it included Dr. Vredenburgh's proposed warning. (*Id.*). These new opinions are not proper for either a supplemental or rebuttal expert report, and should be stricken.

## ARGUMENT

### I. Dr. Vredenburgh's June 7, 2021 supplemental expert report is improper and should be stricken.

Supplementing expert reports under Fed. R. Civ. P. 26(e)(2) is limited to "correcting inaccuracies, or filling the interstices of an incomplete report **based on information that was not available at the time of the initial disclosure.**" *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (emphasis added); *see also Ariz. Oil Holdings LLC v. BP W. Coast Prods. LLC*, No. CV-14-00569-PHX-GMS, 2015 U.S. Dist. LEXIS 194151, at *4 (D. Ariz. May 29, 2015) (Snow, J.). The duty to supplement under Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [original] report." *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013).

Rule 26(e) is also not "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise [its] disclosures in light of [its] opponent's challenges to the analysis and conclusions therein, can add to them to [its] advantage after

8

the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Otherwise, Rule 26(e) "would essentially allow for unlimited bolstering of expert opinions," which "would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Akeva L.L. C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). "Accordingly, a supplemental expert report that states additional opinions or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010).

For these reasons, this Court has stricken supplemental and/or rebuttal expert reports that offer new opinions based on information available to the parties **before** the original expert disclosure deadline—as is the case here. *See, e.g.*, *Universal Engraving, Inc. v. Metal Magic, Inc.*, No. 08-1944-PHX-GMS, 2010 U.S. Dist. LEXIS 146741, at *7 (D. Ariz. Jan. 14, 2010) ("As both parties are by now aware, the Court takes the deadlines and procedures set forth in its Case Management Orders seriously, and expects that all parties will do the same. Thus, in the absence of good cause, Plaintiff was not permitted to supplement the opinions of its expert trial witness after the time required for doing so in the Court's Case Management Order had expired.") (Snow, J.); *Ariz. Oil Holdings LLC v. BP W. Coast Prods. LLC*, No. CV-14-00569-PHX-GMS, 2015 U.S. Dist. LEXIS 194151, at *5 (D. Ariz. May 29, 2015) (striking Plaintiffs' supplemental report that proffered additional opinions on damages based on material "Plaintiffs were either aware or should have reasonably become aware of") (Snow, J.); *Verco Decking Inc. v. Consol. Sys.*, No. CV-11-02516-PHX-GMS, 2015 U.S. Dist. LEXIS 179702, at *4 (D. Ariz. July 21, 2015) (striking Defendants' supplemental expert report due to lack of justification for failure to include the contents in the original report) (Snow, J.); *see also Keener*, 181 F.R.D. at 639-641 (striking "supplemental" report and limiting expert's testimony to initial report where "supplemental" report included new opinions based on information available at the time of the expert's initial report).

Dr. Vredenburgh's June 7, 2021 "supplemental report" is improper for the same reason as those stricken in the cases cited above—it contains **new** opinions, including alternative warnings she claims should have been on the subject product and would have made the warnings adequate. The "supplemental report" does not attempt to correct an inaccuracy in Dr. Vredenburgh's original report nor does it rely on data that was not available to her when she prepared her original report. As mentioned above, all the documents cited in the "supplemental report" were available to Dr. Vredenburgh **before** she prepared her original report. (**Exhibit 1** at 44; *supra* at 7). Once the layers of the "supplemental report" are peeled, it is obvious that Dr. Vredenburgh's intent is to bolster her original report with new opinions she did not initially offer, which is not the purpose of a supplemental report. *Plumley*, 836 F. Supp. 2d at 1062 (supplemental report cannot be used to "strengthen" or "deepen" original report). Dr. Vredenburgh's supplemental report should therefore be stricken.

II.   **Dr. Vredenburgh's July 16, 2021 rebuttal report should be stricken because it incorporates her improper supplemental opinions, includes additional new opinions, and relies on inappropriate interviews of Plaintiffs that materially change their sworn deposition testimony.**

Rebuttal reports are limited to **contradicting or rebutting** new issues raised by the opposing side's experts. They are not intended as a forum to raise new issues or offer new opinions that could have/should have been addressed in an initial report. *See Armer v. CSAA Gen. Ins. Co.*, No. CV-19-04402-PHX-DWL, 2020 U.S. Dist. LEXIS 101851, at *15 (D. Ariz. June 10, 2020) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."); *Facciola v. Greenberg Traurig LLP,* 2012 U.S. Dist. LEXIS 59352, 2012 WL 1242382, *1 (D. Ariz. 2012) ("Rebuttal reports cannot be used to introduce new theories or to correct oversights in the plaintiffs' case in chief."); *Stephenson v. Wyeth LLC*, 2011 U.S. Dist. LEXIS 119013, 2011 WL 4900039, *1 (D. Kan. 2011) ("A party . . . may not use a rebuttal expert to introduce new legal theories."). A plaintiff cannot proffer rebuttal opinions countering Defendants' expert opinions that she should have reasonably foreseen. *Armer*, 2020 U.S. Dist. LEXIS

101851, *18; *see also Faigin v. Kelly*, 184 F.3d 67, 85-86 (1st Cir. 1999) (affirming disallowance of plaintiff's rebuttal evidence because it was intended to address a long-known defense: "When a party knows that a contested matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to complain that the trial court refused to give him a second nibble at the cherry. This principle has particular bite where, as here, nothing new or unanticipated surfaced during the defense case that even arguably changed the topography of the battlefield."). This Court's scheduling order affirms this well-recognized precedent: "Rebuttal experts shall be limited to **responding** to opinions stated by initial experts." (Dkt. 34) (emphasis added). In other words, this Court has already made clear that rebuttal reports are not an opportunity to have a second bite at the apple via new opinions, which is what Dr. Vredenburgh does here.

Here, Dr. Vredenburgh's rebuttal report is not a rebuttal to any of Defendants' experts' reports, but is instead a second bite at the apple and includes new opinions that were not in her initial report, such as: (1) an opinion about differentiating between "notice" and "evidence" of a hazardous condition (**Ex. 7** at 1-4); (2) an opinion about the alleged failure of Fisher-Price to conduct "FMEA and testing" (*Id.* at 4-6); and (3) alternative warnings opinions based on recent "interviews" with Plaintiffs in which Dr. Vredenburgh improperly seeks to change their sworn deposition testimony, as discussed more fully below. (*Id.* at 6-19; *see also* COU_009047, **Ex. 8**; COU_009050, **Ex. 9**). These new opinions should be stricken.

Dr. Vredenburgh's post-deposition interviews of Plaintiffs taken on June 16, 2021 are particularly egregious. Seemingly recognizing that Plaintiffs' sworn testimony about their knowledge, understanding, and familiarity of the warnings was inconsistent with the opinions she plans to offer, Dr. Vredenburgh conducted "interviews" of Plaintiffs with the sole purpose of materially changing their deposition testimony and upending nearly a year of discovery that has taken place since Plaintiffs were deposed in October 2020. Dr. Vredenburgh claims these interviews were necessary because "the parents'

depositions did not ask key questions about their understanding of the hazards with [the] use [of the Rock 'n Play Sleeper]." (**Ex. 7**, at 18).

Comparing Plaintiffs' sworn deposition testimony to their "interviews" with Dr. Vredenburgh underscores just how egregious these interviews are. At their depositions, Plaintiffs testified unequivocally that they saw the warnings on the Rock 'n Play Sleeper, understood them, were familiar with them, and knew the importance of using the restraints (yet they ignored these warnings anyway). (*See supra* at pp. 4-6; *see also* **Ex. 3**, K. Courkamp Dep. Tr. at 101-02; **Ex. 4**, A. Olson Dep. Tr. at 194-95). Now—8 months after their depositions—they claim they did not fully understand the warnings and would have acted differently had the Rock 'n Play Sleeper included the warnings proposed by Dr. Vredenburgh. (**Ex. 7**, Dr., Vredenburgh's Rebuttal Report, at COU_009047 ("Interview with Andrew Olson") and COU_009050 ("Interview with Katie Courkamp")). Specifically, they state in their "interviews" that they did not think the statements on the subject product under "fall hazard" applied to the possibility of suffocation, and that they would not have purchased the product or stopped using it if it included Dr. Vredenburgh's proposed warning—completely contradicting their deposition testimony that understood the warnings and were familiar with them. (*Id.*).

For obvious reasons, conducting these types of "interviews" are not the appropriate role of an expert witness—experts form opinions on the record as it exists; they do not change or shape the record when what exists is inconvenient for their opinions. Further, Plaintiffs were questioned extensively at their deposition about the Rock 'n Play Sleeper's warnings, including whether they saw the warnings and understood them, and they were represented by counsel. To the extent Plaintiffs believed Defendants' cross-examination left the record unclear or incomplete, the time for their counsel to correct it was *at the deposition*—not 8 months later.[3]

---

[3] Plaintiffs also did not submit an errata within thirty days of their depositions, as required under Fed. R. Civ. P. 30(e).

Dr. Vredenburgh's "interviews" are nothing more than self-serving "after-the-fact" contradictory statements that are tantamount to sham affidavits routinely rejected by courts across the country. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (holding that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"); *See Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir. 1985) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

Similarly here, Dr. Vredenburgh should not be permitted to create new evidence, and then form new opinions based on that evidence, when that evidence contradicts sworn deposition testimony already given by the Plaintiffs in this case. To permit such a tactic would mean deposition testimony is never truly final and experts will have *carte blanche* to simply ask a party supposedly "new" questions to wiggle out of inconvenient deposition answers. For this reason and all the others discussed above, the Court should strike the rebuttal report.

## CONCLUSION

For the reasons noted above, Defendants respectfully request this Court enter an Order striking the June 7, 2021 Supplemental Expert Report and July 16, 2021 Rebuttal Expert Report of Dr. Vredenburgh.

RESPECTFULLY SUBMITTED this 30th day of July 2021.

GREENBERG TRAURIG LLP

By: */s/ Aaron T. Lloyd*
    Lori G. Cohen*
    Mary-Olga Lovett*
    Brandon D. Cox*
    Nicole M. Goodwin
    Aaron T. Lloyd
    *Pro Hac Vice
    *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on July 30, 2021, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*

By: */s/ Aaron T. Lloyd*
Greenberg Traurig, LLP

ACTIVE 59120305v1