Nicole M. Goodwin (SBN 024593)
Aaron J. Lockwood (SBN 025599)
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 445-8000
Facsimile: (602) 445-8100
goodwinn@gtlaw.com
lockwooda@gtlaw.com

Lori G. Cohen *(pro hac vice)*
Brandon D. Cox *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
cohenl@gtlaw.com
coxb@gtlaw.com

Mary-Olga Lovett *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
lovettm@gtlaw.com

*Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT, ALISON VREDENBURGH, PH.D.**<br><br>**ORAL ARGUMENT REQUESTED** |

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................... 3

LEGAL STANDARD ....................................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

    I.    Dr. Vredenburgh's Opinions About the Content and Location of the RNPS Warning Should Be Excluded as Unreliable and Irrelevant. ............................................................... 4

        A.    Dr. Vredenburgh did not conduct a scientifically reliable methodology to test her opinions about the content and location of the warning. ........................................... 4

        B.    Dr. Vredenburgh's opinions about the content and location of the warning on the RNPS are irrelevant and will not assist the jury because Plaintiff and Mr. Olson noticed, read, understood, and were familiar with the warning before Z.O.'s death. ........................ 8

    II.    Dr. Vredenburgh's Proposed Alternative Warning Opinions Should Separately Be Excluded as Untimely and Because They Are Not Expert Opinions at All. .......................... 12

    III.    Dr. Vredenburgh's Opinions About the RNPS Design, Design Process, and the Existence of an Alleged Rollover/Suffocation Hazard Are Unreliable and Should Be Excluded. ................................................................................................................................ 13

        A.    Dr. Vredenburgh is not qualified to offer opinions about the design, design process, or the existence of an alleged rollover/suffocation hazard in the RNPS. .......................... 13

        B.    Dr. Vredenburgh's opinion that Fisher-Price knew or should have known about the existence of a rollover/suffocation hazard in the RNPS before Z.O.'s death is unreliable because it is based on unverified and speculative data. ..................................................... 15

    IV.    Dr. Vredenburgh Should Be Precluded from Offering Any Opinions She Has Disclaimed, Including Any Opinion About the Cause of Z.O.'s Death. ............................... 16

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

i

Defendants Mattel, Inc. and Fisher-Price, Inc., (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Evid. 702, move to exclude Plaintiff's expert, Alison Vredenburgh, Ph.D. ("Dr. Vredenburgh"). In support of this Motion, Defendants rely on the following Memorandum of Points and Authorities.

## INTRODUCTION

Plaintiff has disclosed Allison Vredenburgh, Ph.D. as her expert in the area of human factors/warnings. On April 2, 2021, Dr. Vredenburgh prepared an expert report in in which she purports to offer two main opinions: (1) that Fisher-Price failed to effectively warn users of an alleged rollover/suffocation hazard in the RNPS's warnings and instructions; and (2) that Fisher-Price failed to effectively manage an alleged rollover/suffocation hazard created by its design of the Rock 'n Play Sleeper ("RNPS"). These opinions are not, however, based on a competent and reliable methodology, and therefore should be excluded under Rule 702 for the following reasons.

***First***, Dr. Vredenburgh's opinions about the content and location of the warning on the RNPS are based on a flawed and unreliable methodology. Dr. Vredenburgh admits she never conducted any scientific or human factors testing to support her warnings opinions. Indeed, her opinions have been excluded in the past for the same reason. Dr. Vredenburgh's opinions also do not "fit" the facts of this case, and thus are not relevant and will not assist the jury in understanding the evidence.

Additionally, Dr. Vredenburgh purports to opine that different or additional warnings would have changed the outcome in this case—specifically, that if the warnings on the RNPS sleeper contained different language and were located on the front of the RNPS versus the back, then Plaintiff would not have used the RNPS, thus preventing Z.O.'s death. In reaching this opinion, however, Dr. Vredenburgh wrongly relies on information obtained during her improper post-deposition interviews of Plaintiff and Mr. Olson (Z.O.'s parents), which are inherently biased, speculative, and not scientifically reliable. As explained in Defendants' Motion to Strike Dr. Vredenburgh's Supplemental and Sur-Rebuttal Opinions, these post-deposition interviews should be stricken as they

1

are not based on a sound and generally accepted human factors methodology.[1] Once stricken, the record evidence shows there is no competent or reliable basis for Dr. Vredenburgh's purported warnings opinions, and they should therefore be excluded.

***Second***, Dr. Vredenburgh's proposed alternative warning (which forms the basis for her opinions about the content and location of the warning on the RNPS) should be excluded as untimely and because it is not the product of expert testimony at all. It is therefore not helpful to the jury and should be excluded.

***Third***, Dr. Vredenburgh lacks the requisite qualifications to offer opinions about the design, design process, and alleged rollover/suffocation hazard created by the RNPS. Dr. Vredenburgh admitted she is not qualified to offer these opinions and appropriately deferred them to Plaintiff's engineering expert, Dr. Singhose. Unsurprisingly, she admitted that if Dr. Singhose's conclusions and opinions about an alleged suffocation risk in the RNPS are excluded, her purported opinions about the existence of a suffocation hazard fail since they rest on the assumption that the RNPS's design poses an alleged rollover/suffocation hazard.

Lack of requisite qualifications aside, Dr. Vredenburgh admitted she did not conduct any statistical, biomechanical, medical, or human factors analysis of her own to support the alleged premise that there is an elevated risk of rollover/suffocation created by the design of the RNPS when compared to other types of infant sleep products. Furthermore, Dr. Vredenburgh's opinions about Fisher-Price's purported knowledge of a rollover/suffocation hazard in the RNPS are based on inaccurate information and data she never independently verified, making those opinions flawed and unreliable. The Court should exclude these opinions.

---

[1] Defendants incorporate by reference their pending Motion to Strike Dr. Vredenburgh's June 7, 2021 Supplemental Report and July 16, 2021 Rebuttal Report (Dkt. 154), in which Dr. Vredenburgh offers several additional opinions that are procedurally improper and should be excluded on those grounds alone. Defendants do not repeat those arguments here, but do address the substantive points of those arguments that are relevant to this Motion and the exclusion of Dr. Vredenburgh's opinions.

***Fourth and finally***, Dr. Vredenburgh should be precluded from offering any opinions she has disclaimed. Specifically, Dr. Vredenburgh concedes she does not have expertise in various areas upon which her reports touch. She also admits she is not qualified to offer opinions about the cause of Z.O.'s death, and testified she will not do so. Any opinions on these subjects should be excluded.

## FACTUAL BACKGROUND

To avoid repetition, Defendants fully incorporate by reference Sections I and II of their Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, which provides a detailed factual background about the RNPS and the incident that is the basis of this lawsuit.

## LEGAL STANDARD

Federal Rule of Evidence 702 controls the admission of expert testimony. Under Rule 702, the Court acts as a "gatekeeper" to first determine whether an expert is qualified; then the Court determines whether an expert's proposed opinions are reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 597; *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir.) cert. denied, 132 S. Ct. 120 (2011); *Contreras v. Brown*, CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019) ("Rule 702 imposes a special gatekeeping obligation upon a trial judge to make a preliminary assessment of the admissibility of expert [] testimony."); *In re Apollo Grp., Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 962 (D. Ariz. 2007) (confirming the gatekeeping obligation outlined in *Daubert* applies to all expert testimony); *Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) ("In exercising this gatekeeping function, a court must determine that the experts are qualified, that their opinions are reliable, and that their testimony fits the case.").

To determine whether an expert is qualified, the Court must decide whether the individual has the requisite qualifications. *Skinner v. Tuscan, Inc.*, No. CV-18-00319-TUC-RCC, 2020 U.S. Dist. LEXIS 186308, at *23-24 (D. Ariz. Oct. 7, 2020). The

3

Court's review of an expert's qualifications also defines the scope of the expert's permissible testimony. *Swift v. Wesco Ins. Co.*, No. CV-18-01531-PHX-RM, 2021 U.S. Dist. LEXIS 34808, * 19 (D. Ariz. Feb. 23, 2021).

Next, the Court evaluates the reliability and relevancy of the expert's proposed opinions. *Daubert* articulated several inquiries for a district court to consider in determining whether expert testimony is sufficiently reliable to be admitted under Rule 702, including: (1) whether the expert's theory or technique can and has been tested; (2) whether it has been subjected to peer review and publication; (3) what the technique's known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field. 509 U.S. at 593-94; *see also Brown*, 415 F.3d at 1267.

Finally, the Court must determine whether the expert's reasoning or methodology is relevant. *Sampedro v. ODR Mgmt. Grp. LLC*, No. CV-18-04811-PHX-SPL, 2021 U.S. Dist. LEXIS 96323, at *5 (D. Ariz. May 19, 2021). The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *Roosevelt Irrigation Dist. v. United States*, No. CV-15-00448-PHX-JJT, 2019 U.S. Dist. LEXIS 36530, at *5-6 (D. Ariz. Mar. 7, 2019). In doing so, the court must determine whether the opinions being offered are sufficiently tied to the facts in issue and that the expert's testimony will aid the jury. *Daubert*, 509 U.S. at 591 (stating that the district court's "gatekeeping role" requires ensuring that the expert's testimony "is relevant to the task at hand" and will assist the trier of fact to understand the evidence).

## ARGUMENT

**I.    Dr. Vredenburgh's Opinions About the Content and Location of the RNPS Warning Should Be Excluded as Unreliable and Irrelevant.**

**A.    Dr. Vredenburgh did not conduct a scientifically reliable methodology to test her opinions about the content and location of the warning.**

Setting aside the flawed premise on which Dr. Vredenburgh's warnings opinions are based (the existence of an alleged rollover/suffocation hazard about which Fisher-

4

Price failed to warn), Dr. Vredenburgh's opinions about the content and location of the RNPS warning should be excluded as unreliable because they are not based on a scientific methodology and are irrelevant and thus will not assist the jury.

Dr. Vredenburgh claims the warnings and instructions are inadequate as the "bulk of the warning information [is] under 'fall hazard'" and does not adequately inform a consumer about the risk of a suffocation hazard. (Vredenburgh Report at COU_008170, **Ex. A**). Thus, according to Dr. Vredenburgh, the information under fall hazard—related to the infant's developmental milestones—should be under "suffocation hazard," which would then alter consumers' perceptions of the likelihood and severity of a suffocation hazard. (A. Vredenburgh, PhD, Dep. 58:14-22, **Ex. B**; *see also* Defendants' Memorandum in Support of Their Motion for Summary Judgment, which provides a detailed background about the warning on the RNPS). She further claims the warning should inform consumers not to use the RNPS when an infant reaches 5 months of age, contending the developmental milestones language currently under "fall hazard" does not sufficiently inform users of when to stop using the product. (*Id.* at 58:14-22).

But Dr. Vredenburgh fails to offer any scientific support for her opinion that these changes in the content of the warning would have made the warning more adequate or would have prevented this incident from occurring, as she claimed in her deposition. (*Id.* at 299:10-18). Critically, Dr. Vredenburgh admittedly did not perform any testing to evaluate how consumers would respond to her proposed changes to the content of the warning. She also did not conduct any surveys or other type of information gathering to assess the validity of this opinion. Her contention that she was ethically prevented from performing any testing on the RNPS because it is a recalled product and no IRB would approve such testing does not carry the day. (*Id.* at 71:5-72-16). Indeed, she admitted she never prepared a testing protocol and never submitted any protocol to an IRB for approval. (*Id*. at 72:5-74:7). Thus, her testimony on this point is speculative and should be disregarded.

1  Dr. Vredenburgh also did not test any of her opinions about the proposed location of the warning on the RNPS. (*Id.* at 190:17-192:8). The subject RNPS's warning is located on the back panel of the RNPS (as well as in the instruction manual that accompanies the product upon purchase).



(Vredenburgh Report, at COU_008166, **Ex. A**)

According to Dr. Vredenburgh, this location is inadequate because consumers allegedly cannot see it when they are placing their infant into the RNPS. (*Id.* at COU_008165-8168; *see also* A. Vredenburgh, PhD, Dep. at 189:17-190:9, **Ex. B**). She instead claims the warning should be on the front panel. (Vredenburgh Report at COU_008165-8168, **Ex. A**; *see also* A. Vredenburgh, PhD, Dep. at 190:17-191:13, **Ex. B**). But Dr. Vredenburgh fails to offer any scientific support for her opinion that a different location would have made the warning label more conspicuous and likely to be followed by consumers, including Plaintiff. Just like with her opinion about the content of the warning, Dr. Vredenburgh admittedly did not perform any testing to evaluate how consumers would respond to her proposed changes to the location of the warning, despite admitting such testing could have been performed. She also did not conduct any surveys or other type of information gathering to assess the validity of her opinion about the location of the warning.

Absent any scientific testing or accepted human factors methodology, Dr. Vredenburgh's opinions about the content and location of the RNPS are nothing more than *ipse dixit* and do not pass muster under Rule 702. *Davis v. McKesson Corp.*, 2019 U.S. Dist. LEXIS 129369, at *81 (D. Ariz. August 2, 2019) ("an expert's ipse dixit cannot be used to connect existing data to an unproven conclusion"); *see also GE v. Joiner*, 522 U.S. 136, 146 (1997) ("jury should not be asked to speculate on the issue of causation"). In other words, because Dr. Vredenburgh never subjected her hypothesis about the content and location of the warning label on the RNPS to the rigors of scientific testing, she never obtained the facts and data necessary to support her opinion that the content and location of the warnings were defective. *Johnson v. Am. Honda Motor Co.*, 923 F. Supp. 2d 1269, 1275 (D. Mont. 2013) (finding "the analytical gap between the available data and [expert's] ultimate opinion was simply too great" because hypothesis/opinion was never tested) (citing *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)). Her mere assertions, without more, are untested and uncorroborated, and therefore unreliable.

To illustrate, in *Shalaby v. Irwin Indus. Toll Co.*, 2009 U.S. Dist. LEXIS 129812, at *36-41 (S.D. Cal. 2009), Dr. Vredenburgh's warnings opinions were excluded on identical grounds because she admitted during her deposition that she did not collect any empirical data, did not conduct any testing, and did not conduct any surveys to corroborate her opinions. (*Cf.* A. Vredenburgh, PhD, Dep., at 71:5-72-16; 72:5-74:7; 190:17-192:8, **Ex. B**) (admitting she did not conduct any testing or surveys to evaluate her conclusions about the content and location of the warnings). The *Shalaby* court further noted that Dr. Vredenburgh's opinions should be excluded because they did "not shed light on the causation issue." (*Id*. at *43). Just as the court did in *Shalaby*, this Court should exclude Dr. Vredenburgh's untested warnings opinions because they are unreliable and irrelevant under *Daubert* and Rule 702.

7

> **B.  Dr. Vredenburgh's opinions about the content and location of the warning on the RNPS are irrelevant and will not assist the jury because Plaintiff and Mr. Olson noticed, read, understood, and were familiar with the warning before Z.O.'s death.**

Dr. Vredenburgh's opinions that different language would have made the RNPS warning adequate and that the warning should have been on the front of the RNPS as opposed to the back should be excluded because the premise upon which these opinions rely—that is, that users would have read and following the warning with different language and a different location—is inconsistent with the facts of this case, and therefore does not assist the trier of fact. (Vredenburgh Report at COU_008165, **Ex. A)**; *see also Daubert*, 43 F.3d at 1321 n. 17; *accord United States v. Ray*, 956 F.3d 1154, 1159 (9th Cir. 2020) ("a district court deciding whether to admit expert testimony should evaluate whether that testimony 'will assist the trier of fact in drawing its own conclusion as to a fact in issue'") (citation omitted).

As to the location of the warning on the RNPS, Dr. Vredenburgh claims "if users do not notice the warnings . . . they cannot be read or comply with them." (Vredenburgh Report at COU_008165, **Ex. A**). She then states, "to the extent there were warnings [on the RNPS], they were located in a location unlikely to be detected by the users." (*Id.* at COU_008165). She supports this conclusory assertion with more speculative, untested theories, including the foreseeable use of the RNPS (i.e., placing an infant in the RNPS from the front versus the back) would mean users would not see the warning as they were putting the infant in the RNPS. (*Id.* at COU_008168). But Plaintiff's and Ms. Olson's deposition testimony conclusively establishes the warning label (both content and location) was adequate and conspicuous to them because they **noticed it, read it, understood it, and were familiar with it**:

> Q.   And you had seen warnings before; correct?
>
> A.   Yeah.
>
> * * *

8

Q. And it says at the top failure to follow these warnings and the instructions to result in serious injury or death and you had seen that part; right?

A. Yes.

Q. And it says number one, always use restraint system. Do you see that?

A. Yes.

* * *

Q. And you understood that it was absolutely important to use the restraint system; right?

A. Yes.

(K. Courkamp Dep., at 101-02, **Ex. C**).

Q. Of course, you said you were familiar with the warnings and you were constantly checking them against Z.O.'s developmental age; right?

A. Right.

* * *

Q. So, for example, it says always use the restraint system in all caps; correct?

A. Yes.

Q. And there aren't any -- it just says always use the restraint system; correct?

A. Yes.

Q. And you knew that it was important to always use the restraint system; right?

A. Yes.

Q. And you understood the restraint system to be the buckle the crotch restraint which buckled around the baby's waist; correct?

A. Yes.

9

(A. Olson Dep., at 199-204, **Ex. D**).

Simply put, Dr. Vredenburgh's opinions about the content and location of the warning do not "fit" the facts of this case because she cannot prove a different or additional warning or different location would have changed Plaintiff's or Mr. Olson's behavior since they noticed, read, understood, and were familiar with the warning on the RNPS.

In a last-ditch attempt to support her conclusory assertion that Plaintiff would not have used the RNPS had the warning label been comprised of different information and placed in a different location (and thus, Z.O.'s death would not have occurred), Dr. Vredenburgh relies solely on her unreliable and biased post-deposition interviews of Plaintiff and Mr. Olson.[2] Seemingly recognizing that Plaintiff's and Mr. Olson's sworn deposition testimony about their knowledge, understanding, and familiarity of the warning was inconsistent with the opinions she purports to offer here, Dr. Vredenburgh conducted "interviews" of Plaintiff and Mr. Olson for the sole purpose of materially changing their deposition testimony and upending nearly a year of discovery that has taken place since Plaintiff and Mr. Olson were deposed in October 2020. Dr. Vredenburgh claims these interviews were necessary because "the parents' depositions did not ask key questions about their understanding of the hazards with [the] use [of the Rock 'n Play Sleeper]." (A. Vredenburgh, PhD, Dep. 264:6-15, **Ex. B**).

Comparing Plaintiff's and Mr. Olson's sworn deposition testimony to their "interviews" with Dr. Vredenburgh illustrates this problem. At their depositions, Plaintiffs testified unequivocally that they saw the warning on the RNPS, understood it, were familiar with it, and knew the importance of using the restraints. (*See* K. Courkamp Dep. at 101-02, **Ex. C**; A. Olson Dep. at 199-204, **Ex. D**). Now—8 months after their depositions and without being subject to cross-examination—they claim they did not fully understand the warnings and would have acted differently had the RNPS included

---

[2] Defendants previously moved to strike Dr. Vredenburgh's Supplemental Report, which contains these interviews. Defendants adopt and reassert those arguments outlined in their Motion to Strike (ECF No. 154) as though set forth herein.

the warning proposed by Dr. Vredenburgh. (Dr. Vredenburgh's Rebuttal Report, at COU_009047, **Ex. E**; "Interview with Andrew Olson," **Ex. F**; and "Interview with Katie Courkamp," **Ex. G**). Specifically, they now claim in their "interviews" that they did not think the statements on the subject product under "fall hazard" applied to the possibility of suffocation, and that they would not have purchased the product or stopped using it if it included Dr. Vredenburgh's proposed warning—completely contradicting their deposition testimony that they understood the warning and were familiar with it. (*See* **Ex. F** and **Ex. G**).

For obvious reasons, conducting these types of "interviews" is not the appropriate role of an expert witness—experts form opinions on the record as it exists; they do not change or shape the record when what exists is inconvenient for their opinions. Further, Plaintiff and Mr. Olson were questioned extensively at their deposition about the RNPS's warning, including whether they saw the warning label and understood it, and they were represented by counsel. To the extent Plaintiff believed Defendants' cross-examination left the record unclear or incomplete, the time for her counsel to correct it was at the depositions—not 8 months later.

These interviews are nothing more than self-serving "after-the-fact" contradictory statements that are tantamount to sham affidavits routinely rejected by courts across the country. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (holding that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"); *See Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir. 1985) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Similarly here, Dr. Vredenburgh should not be permitted to create new evidence, and then form new opinions based on that evidence, when that evidence contradicts sworn deposition testimony already given by Plaintiff and Mr. Olson in this case. To permit such a tactic would mean deposition testimony is never truly final and

11

experts will have carte blanche to simply ask a party supposedly "new" questions to wiggle out of inconvenient deposition answers.

For these reasons, Dr. Vredenburgh's purported warnings opinions are unreliable and irrelevant because they do not "fit" the facts of this case. They should be excluded.

## II. Dr. Vredenburgh's Proposed Alternative Warning Opinions Should Separately Be Excluded as Untimely and Because They Are Not Expert Opinions at All.

Dr. Vredenburgh did not propose an alternative warning label until she submitted her untimely and improper June 7, 2021 Supplemental Report. Defendants adopt and reassert the arguments outlined in their Motion to Strike (Dkt. 154) as though set forth herein, and for the reasons outlined in their Motion to Strike, Dr. Vredenburgh's proposed alternative warning should be excluded.

Setting aside the fact that Dr. Vredenburgh's proposed alternative warning label was not timely, the proposed warning does not amount to an expert opinion at all. The foundation for Dr. Vredenburgh's proposed warning is an ASTM standard (ASTM F3118), which was not even created by the ASTM until 2 years after the subject RNPS was manufactured. Thus, Fisher-Price could not have used the ASTM F3118 standard as Dr. Vredenburgh claims, but instead could only use the ASTM warning standard in effect at the time the subject RNPS was manufactured—which indeed is the warning that was on the subject RNPS. Dr. Vredenburgh ignores this point entirely and never addresses the fact that the warning standard on which she relies (ASTM F3118)—as well as all ASTM warning standards—was set by the ASTM though a committee process where the CPSC, consumer groups, and others participate and provide input. As such, Dr. Vredenburgh's opinion that the warning on the subject RNPS (also an ASTM warning) was inadequate is contrary to the ASTM's deliberative process.

This deliberative process further shows that Dr. Vredenburgh did not conduct any scientific analysis or research of her own in opining that the ASTM's F3118 warning standard (with her 5-month language included) would have been a more effective

warning. As she admitted herself, all she did was "take their [the ASTM's F3118] label and add the five months on it." (A. Vredenburgh, PhD, Dep., at 224, **Ex. B**); *see also* Vredenburgh Supplemental Report, **Ex. H**; A. Vredenburgh, PhD, Dep. at 258:25-259:3, **Ex. B**). Nor did Dr. Vredenburgh perform any testing to evaluate the efficacy of the alternative warning and the effect of it on consumers, again showing she conducted no scientific analysis at all. Simply put, it is not relevant or helpful to the jury for Dr. Vredenburgh to merely borrow the ASTM's F3118 warning standard (which did not even exist when the subject RNPS was manufactured) and disguise that standard as her expert opinion. The Court should therefore exclude Dr. Vredenburgh's alternative warnings opinions on these additional, independent bases.

**III.   Dr. Vredenburgh's Opinions About the RNPS Design, Design Process, and the Existence of an Alleged Rollover/Suffocation Hazard Are Unreliable and Should Be Excluded.**

   **A.   Dr. Vredenburgh is not qualified to offer opinions about the design, design process, or the existence of an alleged rollover/suffocation hazard in the RNPS.**

Dr. Vredenburgh cannot parrot the opinions of another expert (here, Dr. Singhose) on subjects that are admittedly outside her expertise, especially when the underlying expert's opinions are themselves based on a flawed and unreliable methodology. *See In re Bard Ivc Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 U.S. Dist. LEXIS 211400 at *280-281 (D. Ariz. Dec. 22, 2017) (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (excluding expert's opinion where the expert merely acts as a conduit for another expert); *Shalaby*, No. 07CV2107-MMA (BLM), 2009 U.S. Dist. LEXIS 129812, at *40 (S.D. Cal. July 28, 2009) (excluding Dr. Vredenburgh's opinions due to her lack of qualifications); *see also* Defendants' Motion to Exclude Dr. Singhose.

Yet, throughout Dr. Vredenburgh's Rule 26 Report, she extensively discusses aspects about the design process of the RNPS, and even goes as far as opining that Fisher-Price did not conduct adequate testing during the design process to effectively manage

13

an alleged rollover/suffocation hazard created by the 30-degree incline of the RNPS. (Vredenburgh Report at COU_008157, **Ex. A**; *see also* A. Vredenburgh, PhD, Dep. at 106:1-7, **Ex. B**). Unsurprisingly, however, at her deposition Dr. Vredenburgh admitted she defers all design opinions, including her testing criticisms, to Dr. Singhose since any opinions about the existence of a rollover/suffocation hazard are outside her area of expertise. (A. Vredenburgh, PhD, Dep. 114:6-22; 165:10-15, **Ex. B**). This is important here because of all of Dr. Vredenburgh's opinions are premised on the existence of an alleged rollover/suffocation hazard. In other words, she claims the warning on the RNPS was inadequate because it failed to warn about the existence of an alleged suffocation hazard.

Dr. Vredenburgh also logically admitted that if there is no rollover/suffocation hazard (as she claims there is based on her reliance on Dr. Singhose's opinions), then all her opinions are irrelevant because they presuppose the existence of a rollover/suffocation hazard that then forms the basis of her human factors and warnings opinions here. (*Id.* 116:8-17). Thus, to the extent Dr. Singhose's opinions are excluded as to the existence of an alleged rollover/suffocation hazard related to the design of the RNPS, so too must Dr. Vredenburgh's opinions be excluded based on her clear and unambiguous testimony on this point.

Furthermore, Dr. Vredenburgh admits she possesses no biomechanical mechanism injury expertise and is not a biomechanical engineer. (*Id.* 96:12-97:8). She has never performed any of the tests she claims Fisher-Price should have performed, and she has never developed a testing protocol for these tests. (*Id.* at 137-7:157:18). In fact, she now disavows the 13 testing criticisms located in her original report because she concedes those assertions are outside her purview as a human factors expert. (*Id.* at 137-7:157:18). She has also never designed an infant sleep product before. (*Id.* at 97-8-10). Nor is she an expert on the design or hazards of inclined infant sleep products. (*Id.* at 97:12-16). She has never attempted to independently verify the existence of a suffocation hazard through literature, studies, or her own testing. (*Id.* at 109:2-19). She is not even

14

aware of data or testing that compares the existence of a suffocation hazard in different infant sleep environments to the RNPS. (*Id.* at 109:11-15). Nor has she written, edited, or published peer reviewed papers on the design of infant inclined sleep products or the nuances associated with developing infant inclined sleep products. Thus, even if Dr. Singhose's opinions are not excluded (which they should be), Dr. Vredenburgh's opinions about the design, design process, and alleged existence of a rollover/suffocation hazard in the RNPS—which in turn forms the basis of all her warnings and human factors opinions—should be excluded because she is not qualified and does not have the requisite expertise to offer them.

**B. Dr. Vredenburgh's opinion that Fisher-Price knew or should have known about the existence of a rollover/suffocation hazard in the RNPS before Z.O.'s death is unreliable because it is based on unverified and speculative data.**

Dr. Vredenburgh attempts to opine that Fisher-Price knew or should have known about the existence of a rollover/suffocation hazard in the RNPS before Z.O.'s death. In addition to the above reasons, this purported opinion also fails because it is based on inaccurate and unverified data and information—namely, an "incident data spreadsheet" that was admittedly prepared by Plaintiff's counsel that Dr. Vredenburgh did not independently verify for accuracy. (*Id.* at 173:4-22). Dr. Vredenburgh also admitted that she did not conduct any analysis to determine whether any of the incidents on this spreadsheet were substantially similar to Z.O.'s death such that notice of an alleged rollover/suffocation hazard could be imputed to Fisher-Price. (*Id.* at 175:16-177:7). She simply assumes what Plaintiff's counsel prepared for her is true, which is not a scientifically reliable method to provide a foundation for an opinion.

Expert opinions based on speculation and assumptions unsupported by the record evidence should be excluded as unreliable. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (exclusion of another expert whose testimony was found to be "speculation" that had "scant basis in the record"); *Morrison v. Quest Diagnostics, Inc., et al.*, No. 2:14-cv-01207-RFB-PAL, 2016 WL 3457725, at *4 (D. Nev. June 23, 2016)

15

(citation omitted) (courts have generally held that an "expert's opinion 'should be excluded when it is based on assumptions which are speculative and are not supported by the record'").

Accordingly, Dr. Vredenburgh's opinion that Fisher-Price knew or should have known before Z.O.'s death that the RNPS posed an alleged rollover/suffocation hazard, which in turn provides the basis for her criticisms about the warning on the RNPS, is based on speculation and assumptions unsupported by the record evidence. That Dr. Vredenburgh—a purportedly experienced human factors expert—relied solely on data provided to her by Plaintiff's counsel without independently analyzing or verifying the data is alarming and underscores the unreliability of any opinions that flow from the incident data spreadsheet. For this reason, Dr. Vredenburgh should be precluded from opining that Fisher-Price knew or should have known about a rollover/suffocation hazard before Z.O.'s death as there is no reliable basis to support such an opinion.

**IV.    Dr. Vredenburgh Should Be Precluded from Offering Any Opinions She Has Disclaimed, Including Any Opinion About the Cause of Z.O.'s Death.**

Finally, in her deposition Dr. Vredenburgh expressly disclaimed having expertise in several areas upon which her original, supplemental, and rebuttal reports ostensibly touches. As discussed in more detail above, Dr. Vredenburgh admits she has no engineering expertise, so all opinions about an alleged suffocation hazard in the RNPS should be excluded. (A. Vredenburgh, PhD, Dep. at 96:17-97:8, **Ex. B**). Furthermore, she admits to having no expertise in the areas of pediatrics, pulmonology, Sudden Infant Death Syndrome ("SIDS), Sudden Unexplained Infant Death ("SUID"), medical causation, or infant safe sleep practices. (*Id.* at 94:23-96:11). Additionally, Dr. Vredenburgh testified she will not offer any opinion about Z.O.'s medical conditions or the cause of her death. (*Id.* at 95:19-25).

Thus, Dr. Vredenburgh should not be permitted to testify on any of these subjects by her own admissions and testimony.

16

**CONCLUSION**

For the reasons stated herein, Defendants respectfully request the Court grant this Motion, exclude the opinions and testimony of Dr. Vredenburgh, and grant all other relief to which Defendants may be entitled.

RESPECTFULLY SUBMITTED this 19th day of November, 2021.

GREENBERG TRAURIG LLP


By: */s/ Lori G. Cohen*
    Lori G. Cohen*
    Mary-Olga Lovett*
    Brandon D. Cox*
    Nicole M. Goodwin
    Aaron J. Lockwood
    *Pro Hac Vice
    *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**Certificate of Service**

☒   I hereby certify that on November 19, 2021, I electronically transmitted the attached document by email to the following recipients:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*

By: /s/ *Lori G. Cohen*
    Greenberg Traurig, LLP

61141693

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

18