**GOLDBERG & OSBORNE**
698 E. Wetmore Road, Suite 200
Tucson, Arizona 85705
(520) 620-3975

John E. Osborne, Esq.
State Bar #07085
josborne@goldbergandosborne.com

William C. Bacon, Esq.
State Bar #04895
wbacon@goldbergandosborne.com

John A. Musacchio, Esq.
State Bar #037255
jmusacchio@goldbergandosborne.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>　　　　　　Plaintiff,<br>vs.<br><br><br><br><br><br>Fisher-Price, Inc., a foreign corporation;<br>Mattel, Inc., a foreign corporation.<br><br>　　　　　　Defendants. | No: CV-19-02689-GMS<br><br><br>**PLAINTIFF KATHLEEN COURKAMP'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT ALISON VREDENBURGH, PH.D.**<br><br>**ORAL ARGUMENT REQUESTED** |

　　　　The Court should deny in whole Defendants' Motion to Exclude Plaintiff's Expert Alison Vredenburgh, Ph.D., CPE. Nothing in the Defendants' Motion allows for the exclusion of Dr. Vredenburgh's opinions under Federal Rule of Evidence 702 ("Rule 702"), or any other Rule. Plaintiff incorporates herein by reference Plaintiff's Statement of Facts, Response to Defendants' Motion for Summary Judgment, and Motions to Exclude William Singhose, Ph.D., Michael Goodstein, M.D., and Erik Christensen, M.D., in their entirety.

# INTRODUCTION

The Defendants have moved to exclude all of Alison Vredenburgh, Ph.D.'s expert witness opinions and testimony. Defendants do so on the basis that her testimony will be "unreliable" and "irrelevant" as those terms are understood under Rule 702. Their argument rests on the Defendants' claims (1) that Dr. Vredenburgh's opinions are not based on a competent and reliable methodology and (2) that her opinions are not relevant because they supposedly "do not 'fit' the facts of this case." Def. Motion, 1:12, 18-19. These contentions are without merit.

Dr. Vredenburgh is a highly qualified Ph.D. human factors, safety and warnings expert who holds multiple licenses and certifications. Dr. Vredenburgh's, attached as Exhibit "1", 46-65. Dr. Vredenburgh is being offered to prove that the subject Rock 'n Play Sleeper ("RNPS") subjected babies like Plaintiff's infant child, Z.O., to the unreasonable, unnecessary danger of suffocating and being seriously injured or killed, and that the Defendants failed to provide adequate warnings of this danger.

Dr. Vredenburgh performed the necessary independent investigation and research before arriving at her conclusions. This is sufficient to satisfy Rule 702.

Dr. Vredenburgh's opinions rest on sound scientific authority, further satisfying Rule 702. Defendant has completely ignored – and failed to inform the Court about – the eight (8) scientific publications that Dr. Vredenburgh referenced and relied upon in her expert report, and the additional publications cited in her rebuttal report. Dr. Vredenburgh's Report, Def. Motion Exhibit "A"; Dr. Vredenburgh's Rebuttal Report, Def. Motion Exhibit "E".

Defendants' argument that Dr. Vredenburgh's warnings opinions should be excluded if the Court grants Defendants' Motion to Exclude her Supplemental and Sur-Rebuttal Opinions is misguided. Dr. Vredenburgh's warnings opinions are based upon the multiple sources and observations cited and detailed in her initial expert report and at her deposition and are admissible. Vredenburgh Report, Def. Motion Exhibit "A" at 28-44.

Defendants have also misrepresented that Dr. Vredenburgh supposedly "concedes she does not have expertise in various areas upon which her reports touch." Def. Motion, 3:2-3. This contention is simply false. Defendants have asked the Court to exclude all of Dr. Vredenburgh's opinions that pertain to "the cause of Z.O.'s death." Def. Motion, 3:4. While Dr. Vredenburgh is not a medical doctor and cannot offer opinions as to the medical pathology of Z.O.'s death, she is clearly qualified to offer opinions regarding the human factors science that caused and/or contributed to Z.O.'s death and the Defendants' failure to adequately warn users, such as the Plaintiff and Andrew Olson, Z.O.'s father, of the hazards posed by the RNPS.

For these reasons and those below, Plaintiff asks the Court to deny this Motion.

## ARGUMENT

**I. DR. VREDENBURGH'S OPINIONS ABOUT THE INADEQUATE CONTENT AND IMPROPER LOCATION OF THE RNPS' WARNINGS ARE RELIABLE AND RELEVANT UNDER RULE 702 AND SHOULD NOT BE EXCLUDED.**

A. <u>Dr. Vredenburgh's Opinions About the Content and Location of the Warnings Are Reliable and Are Based On Multiple Valid Sources, Satisfying Rule 702.</u>

Defendants argue that Dr. Vredenburgh's opinions should be excluded because she allegedly "did not conduct a scientifically reliable methodology to test her opinions." Def. Motion, 4:25-26. Defendants' argument ignores the high volume of reliable evidence, information, sources and experience that Dr. Vredenburgh used to form her opinions, satisfying Rule 702.

In reality, Defendants' motion is a veiled attempt to ask this Court to decide whether Dr. Vredenburgh's opinions are valid. That decision is for the jury, not the Court. Rule 702 deputizes district courts to serve as "a gatekeeper, not a fact finder." *City of Pomona v. SQM N. Am. Corp.*, 12-55147, 2014 WL 1724505, at *3 (9th Cir. May 2, 2014) (internal citations omitted). The Court should not make determinations about the validity of an expert's opinions in the Court's role as a gatekeeper because the Court is not a fact finder when reviewing a Rule 702 motion. *Pomona*, 2014 WL 1724505, at *3; *Primiano v. Cook*, 598 F.3d 558, 565

3

(9th Cir. 2010). In fact, the 9th Circuit Court of Appeals holds that even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

Defendants' argument rests solely upon the fact that Dr. Vredenburgh did not perform her own tests on the product, which is only one of several factors for the Court to consider when assessing whether her opinions are reliable under Rule 702. The reliability inquiry, which the Ninth Circuit recognizes is "flexible," *Pyramid Technologies, Inc.*, 752 F.3d at 813-14 (9th Cir. 2014), often turns on the four familiar factors delineated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993) regarding expert testimony; *see also Primiano*, 598 F.3d at 564. These factors include whether the basis of such testimony: (1) rests on appropriate criteria such as testability; (2) has been published and subjected to peer-review; (3) has a known or potential error rate; and (4) is generally accepted within the relevant scientific community. *Pyramid Technologies, Inc.*, 752 F.3d at 813-814.

Notably, however, "the *Daubert* factors are exemplary, not constraining." *Murray v. Southern Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017), *citing Kumho Tire Co., Ltd.*, 526 U.S. at 155. "A district Court may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* As explained below, whether Dr. Vredenburgh performed tests on the RNPS is irrelevant in light of the empirical data and other scientific sources that she used as the basis for her analysis and ultimate opinions.

Defendants incorrectly assert that "Dr. Vredenburgh fails to offer any scientific support for her opinion[s]." Def. Motion, 5:15-10. Defendants ignore the multiple sources and authorities that Dr. Vredenburgh relied on to form her opinions in this case, which include the hundreds of documented consumer complaints informing the Defendants and/or the United States Consumer Protection Safety Commission ("CPSC") that babies were rolling from the safe supine position to the hazardous prone and/or semi-prone positions in the RNPS, that babies were pushing out of the restraint belt, that parents were using the RNPS with babies after they had passed the purportedly "safe" developmental level, that parents (<u>including over</u>

4

50% of its own employees in early Fisher-Price testing) failed to use the seatbelt system, and that babies were suffocating and dying in the RNPS.

Defendants' argument also ignores the fact that Dr. Vredenburgh also based her opinions on her inspection and review of photographs of the subject RNPS and the police and autopsy photographs, her physical inspection of exemplars of the RNPS, the detailed plans of the RNPS, the vast body of documentary evidence Defendants produced pertaining to the development of the RNPS and its warning label (which include, but are not limited to, emails among Defendants' safety personnel, summaries of consultations with Defendants' retained medical expert, and consumer test results), her review of Plaintiff's other expert witnesses' reports and opinions; her review of Defendants' expert witnesses' reports and opinions in this case; her review and application of the relevant literature in the disciplines of human factors and warnings analysis (which include the scholarly articles cited in her reports), her extensive knowledge and experience with forensic human factors and warnings analysis as demonstrated by her resume and at her deposition, and her ultimate human factors analysis regarding the content of the warnings provided by the Defendants and location of those warnings relative to parents' positioning when placing their babies into the RNPS.

While Dr. Vredenburgh could not test the device on human infants and parents after the safety recall, Defendants have ignored Dr. Vredenburgh's warning conspicuity evaluation using infant dolls as surrogates, and that she provided relevant photographic documentation in all three of her reports. Put simply, Dr. Vredenburgh did not need to create "hypothetical" tests on human infants or surveys (as Defendants incorrectly argue) to reliably determine that the content of the RNPS's warnings were insufficient and that their location was improper, because Defendants themselves produced a plethora of empirical data to help form the basis of Dr. Vredenburgh's opinions and she performed her own tests with surrogates.

Notably, neither Defendants nor the Defense experts performed the warnings evaluation that Defendants contend Dr. Vredenburgh should have done prior to releasing the RNPS.

5

Importantly, Defendants' argument also ignores well established Ninth Circuit precedent that "[e]xpert opinion testimony . . . . is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999) (explaining that experts with expertise in a particular discipline "may testify to opinions, including those that are not based on firsthand knowledge or observation"); *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 816 (9th Cir. 2014) (finding Plaintiff's expert's opinions admissible, as they were "based on his knowledge and experience").

Dr. Vredenburgh has addressed human factors and warnings sufficiency throughout her entire career on exactly the types of scientific issues present here, and she used her vast expertise in the relevant disciplines of human factors and warnings analysis to properly form her opinions in this case. *Ramon v. U.S.*, 2006 WL 381671, *8 (D. Ariz. Feb. 17, 2006) (explaining that "human factors . . . is a discipline that applies to a detailed understanding of human capabilities, limitations, expectations and preferences to product design").

Dr. Vredenburgh has qualified as an expert in human factors and warnings on numerous occasions in courtrooms across this country. In the last four (4) years alone, she has testified in not less than twenty-six (26) cases, not including this case. *See* Dr. Vredenburgh's testimony list for the last 4 years, attached as Exhibit "2".

A review of Dr. Vredenburgh's resume further demonstrates her extensive forensic human factors and warnings expertise in a wide variety of applications during her career. For example, she has authored or co-authored ninety-eight (98) publications applying the principles of forensic human factors and warnings/instructions standards to areas including, but not limited to, product liability matters, adequacy of warnings systems to address product hazards, residential and commercial pools, age-related factors in injuries, wheelchair and walkway slopes and standards, air stairs on commuter planes, water park rides, steam showers, tanning beds, latex gloves, ergonomics, fall injuries, traffic patterns, motorcycle visibility, car

accident reconstruction, medical devices, workplace injuries, and communication of risks. Dr. Vredenburgh Resume, Exhibit "1", Pages 6-14.

In addition, Dr. Vredenburgh holds or held the select position of peer reviewer for nine (9) respected journals and publications. *Id.* at Page 6.

Dr. Vredenburgh has also given no less than fifty-nine (59) lectures and presentations relating to the disciplines of human factors and warnings, including, but not limited to, product liability analyses, playground safety, hazards in residential and commercial pools, risk communications, musculoskeletal injuries, workplace injury risk management and safety programs, automobile collision causation, motorcycle conspicuity, walkway accessibility standards, and findings of users' sophisticated knowledge. *Id.* at Pages 15-19.

Dr. Vredenburgh clearly has sufficient expertise, experience and knowledge in the disciplines of human factors and warnings analysis for her opinions in this case to comply with Rule 702. Her education, background and experience well qualify her to reliably analyze the interface between people such as Z.O.'s parents and the RNPS.

Defendants cannot avoid the fact that the warning label they provided on the RNPS failed to give any warning whatsoever that infants could suffocate and die if they rolled from a safe supine position to a hazardous prone or semi-prone position, like Z.O. did.

Instead, Defendants completely misrepresent Dr. Vredenburgh's opinion by claiming that "according to Dr. Vredenburgh, the information [on the warning label] under fall hazard—related to the infant's developmental milestones—should be under 'suffocation hazard.'" Def. Motion, 5:7-10.

Dr. Vredenburgh has not given the opinion that Defendants should have rewritten the "fall hazard" portion of their warning label, as Defendants suggest. Rather, Dr. Vredenburgh's opinion is that even though the warning label warns users about a potential fall hazard once an infant reaches a particular developmental milestone, Defendants completely failed to warn users of the suffocation hazard inherent to the RNPS when infants are prone. Dr. Vredenburgh Report Def. Motion Exhibit "A", Page 22. Notably, even though Defendants' warning label

7

made no mention whatsoever of a suffocation hazard related to rolling in the product, the warning label went into great detail about the potential "fall hazard," which Defendants' own flawed and inadequate medical consultant, Dr. Gary Deegear, doubted would lead to serious injury. Deegear Dep., Vol. 2 (5/11/21), attached as Exhibit "3" 250:15-21; C. Pilarz Dep. (11/09/20), attached as Exhibit "4" 91:21-92:17; Email from Kitty Pilarz to Joel Taft, Michael Steinwachs and Dan Dzialga dated July 15, 2009, attached as Exhibit. "5". Defendants have offered no explanation for why they provided such detailed warnings about the low-risk fall hazard but failed to even mention the significant, deadly risk of suffocation.

Defendants' claim that the *Shalaby* court's exclusion of Dr. Vredenburgh is "on identical grounds" to this case is similarly misguided. *Shalaby v. Irwin Indus. Toll Co.*, 2009 WL 7452756 (S.D. Cal. 2009). *Shalaby*, which was decided more than twelve (12) years ago, is the only consumer product warnings case in which Dr. Vredenburgh has ever been excluded.[1] In *Shalaby*, the court could not see how human factors analysis related to the subject matter. This conclusion is questionable. For instance, the court in *Rodriguez v. JLG Indus., Inc.*, 2012 WL 12883784, at *8 n.61 (C.D. Cal. Aug. 3, 2012) declined to extend the *Shalaby* decision, and the court in *Todd v. Tempur-Sealy Int'l, Inc.,* 2016 WL 5462428 at *7 n.6 (N.D. Cal. 2016) questioned the *Shalaby* court's conclusion. Plaintiff is not aware of any court that has extended the *Shalaby* court's decision to exclude Dr. Vredenburgh or that has extended the *Shalaby* human factors analysis.

This Court should not extend the questionable *Shalaby* decision. Rather, the Court should apply the reasoning that the Ninth Circuit and this District (like dozens of other courts) have long employed to allow Dr. Vredenburgh to testify as a human factors and warnings expert. *See, Primiano*, 598 F.3d at 565; *Rodriguez* 2012 WL 12883784 at *8 n.61; *Todd,* 2016 WL 5462428 at *7 n.6.

  B. <u>Dr. Vredenburgh's Opinions About the Content and Location of the Warning Are Relevant and Will Assist The Jury, Satisfying Rule 702.</u>

---

[1] In contrast, again, Dr. Vredenburgh has testified in twenty-six (26) cases in the last four (4) years alone.

8

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona*, 2014 WL 1724505, at *3; *see also Primiano*, 598 F.3d at 565, 568 (reversing District Court's exclusion of expert testimony).

Dr. Vredenburgh's opinions are highly relevant, as she will testify about several elements of the Plaintiff's claims about the RNPS. Her opinions will assist the jury in deciding several crucial issues.

In particular, Dr. Vredenburgh will help the jury understand parental use of the RNPS by Z.O.'s parents and other users of the RNPS. She will also assist the jury to determine whether the warnings that the Defendants provided on the RNPS were sufficient to adequately warn Z.O.'s parents of the risk that Z.O. could roll and die, that Z.O. could suffocate if she rolled from supine to prone or semi-prone, and whether the warnings on the RNPS were placed in a proper, conspicuous location on the product. She will also help the jury understand the human factors principles crucial to Plaintiff's and Z.O.'s father's use of the product with their infant child and how human factors principles apply to their understanding of the content on the warning label.

Defendants also repeat some arguments from their Motion to Strike Dr. Vredenburgh's supplemental and rebuttal reports dated July 30, 2021. To avoid repetition, Plaintiff will not repeat her entire arguments in opposition to that Motion here, and she incorporates her Response to that Motion into this Response by reference. However, Plaintiff needs to reiterate some key points in order to address Defendants' flawed arguments in the instant Motion.

Defendants baselessly claim that Dr. Vredenburgh acted improperly by interviewing the Plaintiff and Z.O.'s father, Andrew Olson, after they were deposed. Def. Motion, 11:9-11. Dr. Vredenburgh had, and continues to have, the absolute right to speak with Z.O.'s parents about the issues involved in this case. *See*, *e.g.*, *BASF Corp.*, 2014 U.S. Dist. LEXIS 85384.

Defendants also claim that Dr. Vredenburgh somehow attempted to "change" the Plaintiff's and Mr. Olson's deposition testimony because she discussed the content of the warning label with them. That is simply false. Their testimony has not changed in any way.

9

At their depositions, Defense Counsel merely asked them if they had read and understood the warnings that were provided on the RNPS. These questions, and Plaintiff's and Mr. Olson's testimony in response, do not in any way address the sufficiency of the *content* of the warnings nor its general *conspicuity*, which Dr. Vredenburgh opines are grossly insufficient, as the warnings did not caution against the risk of suffocation and death associated with infants rolling to prone in the product. Plaintiff's Counsel had nothing to "correct" at Plaintiff's and Mr. Olson's depositions, as they both answered Defense Counsel's questions truthfully and accurately. In fact, Defense Counsel likely did not ask either of them if they recognized the risk of rolling over and suffocating because the warning label did not contain any warnings about those risks, which is the crux of Dr. Vredenburgh's opinions, and Defendants' fundamental failures with the RNPS's warnings.

Dr. Vredenburgh later asked Plaintiff and Mr. Olson additional, different questions (that Defense Counsel did not ask) in order to assess the *content* of adequate warnings containing appropriate content. The additional information that Dr. Vredenburgh's own clients gave her is in no way "contradictory" to their deposition testimony, nor does it "materially [or even immaterially] chang[e] their deposition testimony" as Defendants falsely allege. Def. Motion, 10:14-15, 11:17-19.

The critical point is that just because the Plaintiff and Mr. Olson admit to having read and understood a deficient warning that lacked sufficient content to properly warn them of the RNPS's suffocation hazard does not somehow turn the deficient warning into a sufficient one, as the Defendants want this Court to believe.

Importantly, Defendants' argument on this point actually demonstrates the validity of Dr. Vredenburgh's opinions. Defendants expressly state that both Plaintiff and Mr. Olson "**noticed [the warning label], read it, understood it, and were familiar with it**." Def. Motion, 8:22-23 (emphasis in original). Dr. Vredenburgh, likewise, recognizes that Plaintiff and Mr. Olson diligently read and followed the warnings that Defendants put on the RNPS, and that they would have followed additional warnings – such as her proposed modified

10

ASTM warning about the rolling/suffocation hazard – if Defendant had put it on the warning label. Dr. Vredenburgh Dep., Def. Motion Exhibit "B" 299:23-300:4; Vredenburgh Rebuttal Report, Def. Motion Exhibit "E" Page 18. Therefore, while Defendants wish to use Plaintiff's and Mr. Olson's testimony to exclude Dr. Vredenburgh, that same testimony actually demonstrates that Dr. Vredenburgh's opinions are based upon reliable testimony (as cited by the Defendant) and, further, are highly relevant to a key issue in the case, as will be explained in more detail below. Therefore, the Court should not exclude Dr. Vredenburgh's opinions.

## II. DR. VREDENBURGH'S PROPOSED ALTERNATIVE WARNING OPINIONS ARE PROPER, RELEVANT, RELIABLE AND SHOULD NOT BE EXCLUDED

Defendants argue that Dr. Vredenburgh's opinions would not assist the jury because she did not propose an alternate warning until her supplemental report. Def. Motion, Page 11, Lines 9-18. Implicit in Defendants' argument is the proposition that Dr. Vredenburgh is required to provide an alternate warning. Moreover, the ASTM F3118 warning was depicted and discussed in her initial report. Dr. Vredenburgh Report, Def. Motion Exhibit "A", Page 16.

Dr. Vredenburgh is not required to prepare or propose an alternate warning in order to satisfy Rule 702. *In re Bard IVC Filters Products Liability Litigation*, No. CV-16-00474-PHX-DGC, 2018 WL 3037161, *3 (D. Ariz. June 19, 2018) (finding that "the jury was equipped to determine whether the warnings given by [defendant] were adequate" "without [plaintiff's] expert testimony as to what alternative warnings should have been given"); *Furry v. Bielomatik, Inc.*, 32 Fed.Appx. 882, 884, 2002 WL 464607, *1 (9th Cir. 2002) (finding that district court abused its discretion by excluding expert's warnings opinions). As a result, Dr. Vredenburgh's opinions in her initial report alone (that the warnings on the RNPS were defective and insufficient) are entirely relevant to the Plaintiff's warnings defect claim, and sufficient to carry Plaintiff's burden of proof on this issue. Dr. Vredenburgh Report, Def. Motion Exhibit "A", Pages 9-22. Her supplemental report expands on that issue by proposing an alternative warning, and her rebuttal report properly rebuts, responds to and counters the

11

Defendants' experts' opinions and arguments on warnings. Dr. Vredenburgh Supplemental Report, Def. Motion Exhibit "H"; Dr. Vredenburgh Rebuttal Report, Def. Motion Exhibit "E".

Defendants falsely claim that Dr. Vredenburgh did not do sufficient research because she allegedly "missed" the fact that ASTM F3118 was issued after Z.O.'s death. Instead, Dr. Vredenburgh used the ASTM F3118 warning label as the basis for her proposed, adequate warning label when she created a warning label to supplement her opinions and rebut defendants' experts' contentions. Moreover, she stated that as members of the ASTM committee, Fisher Price would have been aware of this draft warning prior to its final issuance. Dr. Vredenburgh Report, Def. Motion Exhibit "A" Page 17. Dr. Vredenburgh's rebuttal report further explicitly explained even additional relevance to ASTM F-3118-17 and its development after Z.O.'s death when she stated that, "There continued to be incidents subsequent to [Z.O.'s] death, even after additional warnings were added per ASTM F-3118-17." Dr. Vredenburgh Rebuttal Report, Def. Motion Exhibit "E". Therefore, Defendants' claim that Dr. Vredenburgh did not do sufficient research is simply false.

Further, it is well settled in this jurisdiction that Defendants can be found liable in product liability cases even if they fully complied with applicable industry standards. *Rossell v. Volkswagen of Am.*, 147 Ariz. 160, 166-67, 709 P.2d 517, 523-24 (1985) (rejecting rule that compliance with industry standard was complete defense in negligent design case); *Hess v. Bumbo Int'l Tr.*, No. CV 13-944 TUC DCB, 2014 U.S. Dist. LEXIS 199387, at *21 (D. Ariz. Sep. 9, 2014) (manufacturer's claim that its baby seat met ASTM standards for "other similar products" was not sufficient to prove the manufacturer acted reasonably).

Defendants' contention that Defendants "could only use the ASTM warning standard in effect at the time the subject RNPS was manufactured—which indeed is the warning that was on the subject RNPS" is patently false and is contrary to applicable law. Def. Motion, 12:16-19. *Dart v. Wiebe Mfg, Inc.*, 147 Ariz. 242, 246, 709 P.2d 876, 880 (1985) (Arizona employs a hindsight test from the perspective of the evidence presented at trial to judge the facts regarding product defect).

Regardless of the standard that existed when the subject RNPS was manufactured, Defendants should have included additional warnings based on what they knew and/or should have known about this particular product's rollover and suffocation hazards. *See Rossell*, 147 Ariz. at 166 (a rule that compliance with industry standard was a complete defense would "tend to permit commercial defendants to prevail as a matter of law if their conduct complied with a general, negligent practice prevailing in their industry"). Defendants blatantly omitted content to warn that babies could roll over supine or semi-supine and suffocate to death.

Interestingly, Defendants even point out that Dr. Vredenburgh's proposed alternative warning includes more language in addition to ASTM F3118's sample warning language. Def. Motion, 12:27-28. Therefore, Defendants could – and should – be found liable for Z.O.'s death even if they had used ASTM F3118's sample warning language, because even that language alone (without mention of the specific suffocation hazard) was insufficient to properly warn users of the RNPS's suffocation hazard. ASTM F3118 alone does not contain content to warn that babies placed in the RNPS could roll over supine or semi-supine and suffocate to death. *See, e.g., Hess,* No. CV-13-944-TUC-DCB at *21 (evidence that unique baby seat complied with standards set for similar products, despite the lack of a direct standard for the unique seat, was unpersuasive). The ASTM would necessarily rely on a manufacturer to place such explicit content related to the specific product at issue.

Dr. Vredenburgh's proposed warning label is entirely relevant to this case and will help the jury understand the deficiencies of the label that Defendants actually included on the subject RNPS.

### III. DR. VREDENBURGH'S OPINIONS ABOUT THE RNPS ARE RELIABLE AND SATISFY RULE 702.

#### A. Dr. Vredenburgh Can Properly Rely On Plaintiff's Other Experts' Opinions About The Design, Design Process and The RNPS' Rollover And Suffocation Hazards And Apply Those Principles To Her Areas Of Expertise

Defendants argue that "Dr. Vredenburgh cannot parrot the opinions of another expert (here, Dr. Singhose) on subjects that are admittedly outside her expertise . . . ." Def. Motion,

13

13:15-16.  Defendants again blatantly misrepresent the extent and substance of Dr. Vredenburgh's report, analysis and opinions.

Dr. Vredenburgh has relied partially on Plaintiff's mechanical engineering expert William Singhose, Ph.D., to formulate some of her opinions in this case.  Her reliance on Dr. Singhose for issues outside of her own areas of expertise is entirely proper and is not a reason to exclude her opinions under Rule 702.  Insofar as Dr. Singhose's opinions regarding the defective design of the RNPS, Defendants' faulty design process, and the rollover and suffocation hazards inherent to the RNPS impact Dr. Vredenburgh's analysis of the human factors, safety and warnings pertaining to the RNPS, she can properly rely on those opinions and should not be excluded or precluded from referring to them or testifying as to their impact on her analysis.  Rule 703, F.R.Evid. ("An expert may base an opinion on facts or data in the case that the expert has been made aware of … .").

To exclude Dr. Vredenburgh from testifying to human factors opinions derivative of other experts' opinions in the case, as Defendants have asked, would improperly exclude Dr. Vredenburgh's opinions that are well within her areas of expertise, and excise her ability to provide foundation for her opinions.  Exclusion on this basis would imply that Dr. Vredenburgh must be expert in other experts' areas of expertise, such as Dr. Singhose's mechanical engineering expertise, which is ludicrous.

Plaintiff will offer Dr. Vredenburgh as an expert only in the areas for which she has been identified.  If Defendants object to the scope of her testimony at trial, those objections should be addressed at that time, without the risk of prejudicing Plaintiff.

B. <u>Dr. Vredenburgh's Opinion that Defendant Fisher-Price Knew or Should Have Known About the Existence of a Rollover/Suffocation Hazard in the RNPS Before Z.O.'s Death Is Reliable and Satisfies Rule 702.</u>

Defendants again blatantly misrepresent Dr. Vredenburgh's deposition testimony by falsely claiming that she relied solely on an "incident data spreadsheet" prepared by Plaintiff's counsel that summarizes sixty-six (66) reported incidents involving the RNPS, that she "did not independently verify for accuracy" the information on the spreadsheet, and that she

14

"admitted that she did not conduct any analysis to determine whether any of the incidents on this spreadsheet were substantially similar to Z.O.'s death such that notice of an alleged rollover/suffocation hazard could be imputed to [Defendant] Fisher-Price." Def. Motion, 15:15-18. These contentions are patently false.

In reality, Dr. Vredenburgh testified that she read and analyzed each of the incident reports, and that they are all substantially similar to Z.O.'s death:

> Q. [By Defense Counsel] Okay. And again, I assume that 66 reference there is corresponding to the 66 incidents that's in your actual report on page 7; correct?
>
> A. Yes.
>
> Q. Did you perform any analysis of the incidents themselves to assess whether they were substantially similar to the [Z.O.] incident?
>
> A. Yes. I read the comments [to the reports], and they have things like wriggled out of restraints, found on the floor, fell back out of the back, pushed through straps, pushed out of restraints, suffocation risk. So these all – cessation of breathing, no – says no death, infant found under headrest. So these are relevant to – to this case as far as the restraints.[2]
>
> * * *
>
> Q. * * * And you talked about how you relied on the comments section, and that section was prepared by someone other than yourself; correct?
>
> A. Right. It's taken from the – the comments on the [incident report] form[s].

Dr. Vredenburgh Dep., Def. Motion Exhibit "B" 175:12-176:1; 176:7-11.

Importantly, Dr. Vredenburgh proceeded to explain to defense counsel in her deposition that her opinion that the restraint was insufficient was based upon her "experience working

---

[2] The RNPS included a three-point restraint (or "belt") that was allegedly intended to keep babies in the proper supine position while in the RNPS. Z.O. died when she rolled over out of the proper supine position and suffocated in a prone or semi-prone position with her face against the fabric of the RNPS. All of these 66 incident reports include evidence that Defendants knew about one or more element that contributed to the suffocation hazard inherent to the RNPS. Several of the 66 incident reports include evidence that some babies were able to free themselves from the restraint. Others involve babies who rolled out of the safe supine position. Some others even explain that babies stopped breathing. All of these directly relate to Z.O.'s death.

15

with restraints on children's devices… ," rather than simply "common sense" (as Defense Counsel asked). Dr. Vredenburgh Dep., Def. Motion Exhibit "B" 178:9-14.

In addition to Defendants' disingenuous misrepresentation of Dr. Vredenburgh's thorough review and analysis of the 66 incident reports, the cases cited by Defendants are inapplicable. Unlike in *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988), where the court found the expert's opinions to be "speculation" with "scant basis in the record", and unlike in *Morrison v. Quest Diagnostics, Inc., et al.*, No. 2:14-cv-01207-RFB-PAL, 2016 WL 3457725, at *4 (D. Nev. June 23, 2016), where the court noted that expert opinions are generally excluded when they are "not supported by the record," the record in the instant case contains more than two million (2,000,000) pages of documents, most of which Defendants produced to Plaintiff. Dr. Vredenburgh reviewed ***the entire record*** in this case as the basis for her opinions. As explained above, Dr. Vredenburgh also relied upon a multitude of other reliable sources in addition to the 66 incident reports and the other documents that Defendants disclosed.

Even focusing solely on the relevant incident reports detailing the 66 prior incidents involving the RNPS (and not even counting the several hundred additional incident reports involving injuries and deaths that occurred in the RNPS after Z.O.'s death), Defendants' argument that Dr. Vredenburgh's opinions have "scant basis in the record" is simply illogical because there is a substantial record of other similar incidents, in fact. Dr. Vredenburgh's opinions are supported by significant evidence of other similar incidents including much evidence produced by Defendants. *See*, *e.g.*, *Jones v. Pak-Mor Mfg. Co.*, 145 Ariz. 121, 128, 700 P.2d 819, 826 (1985) (holding that prior similar incidents or the absence thereof are admissible because "the law is better served by a rule which gives manufacturers and distributors the utmost incentive to acquire, record, and maintain information regarding the performance of their products"); *Hess*, at *21 (D. Ariz. Sep. 9, 2014) (evidence that manufacturer of a child seat had received reports of 227 other injuries suffered in their product could support a jury's determination that the manufacturer acted unreasonably). All this

incident report evidence upon which Dr. Vredenburgh relies is wholly relevant under the law in this District.

Defendants have cited no basis for the Court to exclude Dr. Vredenburgh's opinions and this Motion should be denied in its entirety.

## IV. ALLEGEDLY DISCLAIMED OPINIONS.

This Court should not preemptively exclude Dr. Vredenburgh from testifying to any topics, as it may lead to exclusion of opinions which are within her areas of expertise, prejudicing Plaintiff. Plaintiff will offer Dr. Vredenburgh as an expert only in the areas for which Plaintiff has offered her. Defendants' objections to the scope of her testimony are premature and should be addressed at trial.

## CONCLUSION

Based upon the foregoing, the Court should deny Defendants' Motion To Exclude Plaintiff's Expert Alison Vredenburgh, Ph.D. in its entirety.

DATED this 7th day of January, 2022.

GOLDBERG & OSBORNE

By: */s/John E. Osborne*
    John E. Osborne, Esq.
    William C. Bacon, Esq.
    John A. Musacchio, Esq.
    *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on the 7th day of January, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following participants of the CM/ECF System:

Nicole M. Goodwin
Aaron J. Lockwood
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Ste. 700
Phoenix, AZ  85016
(602) 445-8000
goodwinn@gtlaw.com
lockwooda@gtlaw.com

Lori G. Cohen (*pro hac vice*)
Brandon D. Cox (*pro hac vice*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Ste. 2500
Atlanta, GA  30305
(310) 553-2100
cohenl@gtlaw.com

Mary-Olga Lovett (*pro hac vice*)
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, TX 77002
*lovettm@gtlaw.com*

By: */s/ Karen M. Giacoletti*