# EXHIBIT 3

Page 143

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OKLAHOMA
 2                        TULSA DIVISION
 3    ERIN BOOTH and JEFFREY BOOTH,
      Individually and as
 4    Representatives of the ESTATE
      OF J.R.B., Deceased
 5
          v.                       Case No. 4:19-cv-00522-JFH-FHM
 6
      FISHER-PRICE, INC.;          Hon. John F. Heil, III
 7
          and
 8
      MATTEL, INC.
 9
10
              *******************************************
11
                 ORAL AND VIDEOTAPED DEPOSITION OF
12
                     DR. GARY STEVEN DEEGEAR
13
                          MAY 11, 2021
14
                         VOLUME 2 OF 3
15
              *******************************************
16        ORAL AND VIDEOTAPED DEPOSITION OF DR. GARY
17    STEVEN DEEGEAR, produced as a witness at the
18    instance of the Defendants was duly sworn and was
19    taken in the above-styled and numbered cause on the
20    11th day of May, 2021, from 10:35 a.m. to 3:58 p.m.,
21    by Mary A. Burkes, Certified Shorthand Reporter, in
22    and for the State of Texas, at 8000 Interstate 10
23    West, San Antonio, Texas, 78230, pursuant to Federal
24    Rules of Civil Procedure (and the provisions stated
25    on the record or attached hereto).
```

Case 2:19-cv-02689-GMS   Document 204-3   Filed 01/07/22   Page 3 of 3
Gary Steven Deegear, Vol 2                                 May 11, 2021
In Re: Fisher-Price/Mattel

Page 250

1    Q.  "He liked the head dam, but thought the
2    transition from the seat back to the head dam could
3    be a little more substantial."
4    A.  Yes.
5    Q.  "He suggested that a cutout or depression in
6    the head dam, the head area, would increase the
7    margin of safety and make it that much more
8    difficult for an arching infant to defeat the head
9    dam."
10   A.  Yes.
11   Q.  "He also suggested that we could use a
12   stretchy-type mesh material in the foot rest area to
13   make it more difficult for the occupant to push."
14   A.  Yes.
15   Q.  "However, Dr. Deegear reiterated his
16   previous conclusion that even if a child were to
17   push themselves out of the seat, the limited fall
18   height would not result in a significant injury.
19   Likely outcome would be bruises and abrasions."
20       And you still stand by that, right?
21   A.  Yes.
22   Q.  "And he also stated that if a child were to
23   get their head over the edge of the top of the seat,
24   he did not believe that there was any potential for
25   neck impingement or suffocation," right?