1  Nicole M. Goodwin (SBN 024593)
2  Aaron J. Lockwood (SBN 025599)
   **GREENBERG TRAURIG, LLP**
3  2375 E. Camelback Road, Suite 800
   Phoenix, AZ 85016
4  Tel: (602) 445-8000
   Facsimile: (602) 445-8100
   goodwinn@gtlaw.com
5  lockwooda@gtlaw.com

6  Lori G. Cohen *(pro hac vice)*
   Brandon D. Cox *(pro hac vice)*
7  **GREENBERG TRAURIG, LLP**
   3333 Piedmont Road NE, Suite 2500
8  Atlanta, GA 30305
   Telephone: (310) 553-2100
9  Facsimile: (310) 553-2212
   cohenl@gtlaw.com
10 coxb@gtlaw.com

11 Mary-Olga Lovett *(pro hac vice)*
   **GREENBERG TRAURIG, LLP**
12 1000 Louisiana Street, Suite 1700
   Houston, TX 77002
13 Telephone: (713) 374-3541
   Facsimile: (713) 754-7541
14 lovettm@gtlaw.com

15 *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    I.    The Discovery Rule Does Not Save Any Of Plaintiff's Time-Barred Claims. ...................................................................................... 2

    II.   Plaintiff Provides No Competent, Admissible Evidence That The Rock 'N Play Sleeper Caused Z.O.'s Death. ................................................. 6

    III.  Plaintiff Provides No Competent, Admissible Evidence To Prove The Rock 'N Play Sleeper Was Defective. ................................................ 6

    IV.  Plaintiff Fails To Identify Any Affirmations Of Fact Or Promise By Defendants That Became "The Basis Of The Bargain" To Sustain Her Breach of Express Warranty Claim. ....................................... 9

    V.   Plaintiff Has No Proof That Defendants Acted With "An Evil Mind." ..................................................................................................... 9

CONCLUSION ............................................................................................................... 11

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

i

**INTRODUCTION**

In response to Defendants' Motion, Plaintiff was required to present affirmative, competent, and admissible evidence showing why her claims should not be dismissed as a matter of law. Plaintiff failed to do so. Instead, Plaintiff's Opposition underscores the lack of admissible evidence to support her claims at the summary judgment stage. Tellingly, she spends nearly two-thirds of her thirty-page brief reciting her version of the background facts but fails to connect her narrative to the actual issues before the Court on summary judgment.

First, while Plaintiff argues the discovery rule makes her strict liability and negligence claims timely, her brief lends further support to Defendants' position. Specifically, she cites more guidelines and research that she claims should have put Defendants on notice that the Rock 'n Play Sleeper ("RNPS") was unsafe dating back to as early as 1992. While Defendants do not agree with Plaintiffs' characterizations of the cited guidelines and research, that same information was equally available to Plaintiff and put *her* on notice of a potential claim long before she filed. Plaintiff also misconstrues A.R.S. § 47-2725 in arguing for the application of a discovery rule on her express warranty claim (and in any event, the claim is still time-barred even if a discovery rule applies).

Third, Plaintiff cannot dispute that without Dr. Christensen's testimony, which should be excluded under Fed. R. Evid. 702, she has no evidence of medical causation that would permit this case to proceed to trial.

Fourth, Plaintiff fails to set forth competent, admissible evidence to prove the RNPS was defective.

Fifth, in addition to being time barred, Plaintiff's breach of express warranty claim is also defective on the merits. There is *no* evidence establishing that any "affirmations of fact or promise" made by Defendants to Plaintiff were the "basis of the bargain" for the purchase of the RNPS. Indeed, Plaintiff cannot dispute that she never even saw the

1

product packaging or any advertisements for the subject RNPS. She did not even purchase the product—it was a gift.

Finally, Plaintiff fails to meet her burden to show that punitive damages are appropriate here. Defendants have presented uncontroverted evidence about the robust process employed during the development of the RNPS and their compliance with all applicable standards. Rather than address this evidence, Plaintiff relies on hyperbole and conjecture, and does not come close to establishing Defendants acted with an "evil mind."

In summary, Plaintiff's Opposition does not nothing to save her claims from being dismissed as a matter of law. The Court should therefore grant Defendants' Motion.

## ARGUMENT

### I. The Discovery Rule Does Not Save Any Of Plaintiff's Time-Barred Claims.

Plaintiff does not dispute that the 2-year limitations period set forth in A.R.S. § 12-542 governs her strict liability and negligence claims. Plaintiff also concedes that those claims accrued when she, "by the exercise of reasonable diligence[,] should have discovered that . . . she has been injured by the defendant's negligent conduct." (Pl.'s Opp., p. 24). Yet, Plaintiff provides *no factual support* to show how the discovery rule saves her claims. Nor does Plaintiff sustain her burden of explaining away the body of precent establishing that the failure to have taken action to "investigate and discover" the claim negates application of the discovery rule. *See, e.g., Roulston v. Foree Tire Co.*, No. 88-2691, 1990 U.S. App. LEXIS 27759, at *8 (9th Cir. Mar. 29, 1990). Instead, Plaintiff summarily states, without a single citation, that she "could not reasonably have discovered the hazard posed by the RNPS and the identity of Defendants until the recall in April, 2019." (*Id.*) This argument fails on its face, as the claimed hazard—the inline of the RNPS—is apparent just by looking at the product. It is not latent or hidden. Moreover, as discussed in Defendants' Motion, this unsupported position is, in fact, contrary to Plaintiff's own arguments and allegations.

Plaintiff was on inquiry notice for her claims. Plaintiff relies on several publicly available documents and materials published well before the 2019 voluntary recall of the

2

RNPS that she claims should have placed *Defendants* on notice of an issue with the safety of the RNPS. But those allegations cut both ways, and if Defendants were on notice, *Plaintiff* through the exercise of reasonable diligence could also have learned about these claimed safety issues years ago.

In the Opposition, rather than confront this double standard, Plaintiff provides support for Defendants' position by arguing the RNPS conflicted with guidelines and research on infant sleep from long before the RNPS was recalled, including: (1) Statements from pediatricians, National Institute of Child Health and Development, and the American Academy of Pediatrics ("AAP") regarding safe infant sleep in the 1990s, 2005, 2006, 2011, 2015, and 2016. (Pl.'s Opp., pp. 1-3).

Again, Defendants do not agree that the RNPS conflicts with these publications or that the product is defective. But Plaintiff's position is to the contrary, and she was equally charged with the same inquiry notice about the alleged safety issues with the RNPS about which she now claims Defendants should have known. Indeed, as discussed in Defendants' Motion, there were also multiple lawsuits with substantially similar allegations to this case regarding the RNPS, which were filed well before the 2019 voluntary recall of the RNPS. (*See* Motion at pp. 4, 23-24, 28 (citing *Torres* and *Goodrich* cases)). If other plaintiffs could investigate and had sufficient information to bring lawsuits asserting *nearly identical* claims as to the *same product* well before the recall, Plaintiff cannot credibly claim she could not. Thus, it should be no surprise that Plaintiff's Opposition confirms she could have, with the exercise of reasonable diligence, discovered her claims sooner than she did. Because the underlying incident occurred in 2014 and the discovery rule is of no help, the strict liability and negligence claims are time-barred as a matter of law.

On her breach of express warranty claim, Plaintiff incorrectly argues the discovery rule should apply. Plaintiff's supposed support comes from two sources: (1) A.R.S. § 47-

2725(B);[1] and (2) *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 898 P.2d 964 (1995). Neither source supports Plaintiff's position.

First, Plaintiff misapplies § 47-2725(B). The first sentence of that subsection is clear and unambiguous: "A cause of action *accrues when the breach occurs*, regardless of the aggrieved party's *lack of knowledge* of the breach." (emphasis added). Here, the alleged incident occurred on June 19, 2014, and Plaintiff received the product as a gift some period of time earlier—both dates well clear of the four-year statute of limitations given the April 2019 filing of the Plaintiff's complaint. No discovery rule applies based on the plain language of the statute.

To avoid this conclusion, Plaintiff relies on the future performance exception for express warranties in the second sentence of § 47-2725(B). But Plaintiff does not identify an express warranty at all—she *implies* a warranty from the marketing of the RNPS as a sleeper. In any event, this theoretical implied warranty is outside the future performance section for several reasons. First, an implied warranty, by its very nature, cannot possibly be an explicit warranty of future performance, as the statute requires. Second, the alleged warranty makes no mention of a future warranty period, as it must. *See Parcell v. Wright Med. Tech., Inc.*. No. CV 12-0368-PHX-JAT, 2012 U.S. Dist. LEXIS 93496 (D. Ariz. July 6, 2012) (applying majority rule that there must be specific reference to some future time, relying on *W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994)); *City of Cincinnati, Ohio v. Dorr-Oliver*, 659 F. Supp. 259, 264 (D. Conn. 1986) (explaining that express warranties involving future performance will refer either to an explicit period of years or a "lifetime" warranty). Third, the alleged warranty concerned the product's inherent condition, not future performance that required the product to perform before a breach could be discovered. *See e.g.*, *Sellon v. Gen. Motors Corp.*, 571 F. Supp. 1094, 1097-99 (D. Del. 1983) (warranty that fuel tank provided "impact security" was not within exception, despite plaintiff's argument that a defect

---

[1] Plaintiff's Opposition quotes A.R.S. § 47-2725(B), but erroneously cites to A.R.S. § 47-2517B—a section number that does not exist within the Arizona Uniform Commercial Code.

4

could not be discovered until an impact occurred). For all of these reasons, the future performance exception does not apply and therefore no discovery rule applies to Plaintiff's warranty claim.[2]

Plaintiff's reliance on *Gust* is also misplaced. *Gust* was a breach of contract dispute subject to an entirely different statute regarding contracts in writing for debt—A.R.S. § 12-548. The *Gust* Court determined that the discovery rule should apply to claims arising under that section. *Gust*, 898 P.2d at 969. Its ruling did not extend to the applicability of discovery rule to actions arising within the Arizona U.C.C. or more specifically breach of express warranty claims arising under A.R.S. § 47-2725. As Plaintiff concedes in her Opposition, *Gust* contains a footnote that *expressly supports Defendants' position* that the discovery does not apply to breach of express warranty claims under A.R.S. § 47-2725. Indeed, the footnote uses § 47-2725 as an example where the legislature *expressly determined that the discovery rule should not apply*, unlike the statute the Court was interpreting. *See Gust*, 898 P.2d at 966 n.1.

In a last-ditch effort, Plaintiff attempts to distinguish *Gust*, as well as *Moses v. Nordic Boats*, 2008 Ariz. App. Unpub. LEXIS 434, at *5 (Ariz. App. Oct. 16, 2008)—a product liability case applying § 47-2725—as not involving personal injury claims. She contends that given the nature of her claims, it would be unconstitutional for the Court to apply the provisions of A.R.S. § 47-2725. But Plaintiff cites no Arizona case in support of this conclusion. Plaintiff also ignores that breach of express warranty claims based on personal injury in this district have been dismissed under this statute. *See, e.g.*, *Parcell*. No. CV 12-0368-PHX-JAT, 2012 U.S. Dist. LEXIS 93496 (D. Ariz. July 6, 2012) (dismissing plaintiffs' breach of express warranty claim for injuries from a hip implant under A.R.S. § 47-2725(B) after concluding no tolling applied).

Thus, all of Plaintiff's claims are time-barred as a matter of law, and summary judgment should be granted. The Court need not even reach the remaining arguments.

---

[2] Even if a discovery rule does apply, it does not save Plaintiff's warranty claims for the same reasons discussed above with respect to the strict liability and negligence claims.

5

## II. Plaintiff Provides No Competent, Admissible Evidence That The Rock 'N Play Sleeper Caused Z.O.'s Death.

Defendants' Motion demonstrated that they are entitled to summary judgment on all of Plaintiff's claims because Plaintiff has not proven, through competent and reliable expert testimony, that any alleged defect in the design or warning of the RNPS was the proximate cause of Z.O.'s death. Despite claiming to have a "significant amount of evidence" to establish causation, in her Opposition, *Plaintiff relies only on the unreliable and inadmissible opinion of Dr. Christensen*. (*See* Pl.'s Opp., p. 23).

Plaintiff attempts to bolster Dr. Christensen's causation opinion by baselessly asserting that he "ruled out every other possible cause of death" without any citations to the record. As detailed in Defendants' Motion to Exclude Dr. Christensen (Dkt. 194), his methodology fails to account for several factors surrounding Z.O.'s death, including, but not limited to, the presence of multiple external SIDS risk factors, Z.O.'s rigor mortis, and Z.O.'s lividity. Dr. Christensen's failure to account for these factors renders his differential diagnosis inadequate and his causation opinion unreliable. Without this causation opinion, Plaintiff's entire case fails and must be dismissed as a matter of law. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (affirming district court's exclusion of plaintiff's experts in products liability action and finding that without the experts, plaintiff could not prove causation or liability); *Cloud v. Pfiezer, Inc.*, 198 F. Supp.2d 1118, 1138-39 (D. Ariz. 2001) (holding same).

## III. Plaintiff Provides No Competent, Admissible Evidence To Prove The Rock 'N Play Sleeper Was Defective.

It is Plaintiff's burden to prove the RNPS was defective and unreasonably dangerous when it left Defendants' control. *Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007) ("With respect to Plaintiff's defective design theory regarding the subject cement mixer, Plaintiff has the burden to demonstrate that the [subject product] was in a defective condition that made it unreasonably dangerous, the defective condition existed when the [subject product] left the Defendant's control, and the defective condition proximately caused the injuries."). Plaintiff attempts to meet this burden in two

6

ways: (1) through her proposed expert opinions; and (2) through circumstantial evidence. Both attempts fall short.

Plaintiff first contends that the proposed expert opinions of Dr. William Singhose, Dr. Alison Vredenburgh, and Dr. Michael Goodstein conclude the RNPS was defective and unreasonably dangerous. As discussed at length in Defendants' Motion for Summary Judgment (Dkt. 195, pp. 29-30), as well as Defendants' respective Motions to Exclude Drs. Singhose, Vredenburgh, and Goodstein (Dkts. 191, 192, and 193), the opinions of these experts lack reliability and should be excluded. Therefore, Plaintiff's reliance on these experts' opinions fails.

Plaintiff's reliance on circumstantial evidence is equally without merit. While Arizona permits Plaintiff to rely on circumstantial evidence to infer a defect in the subject product, *see Dietz v. Waller*, 141 Ariz. 107, 110, 685 P.2d 744, 747 (Ariz. 1984) ("Plaintiffs … must be permitted to rely upon circumstantial evidence alone in strict liability cases…"), this does not excuse Plaintiff from the requirements of Fed. R. Civ. P. 56 and LRCiv 56.1, which demand reliance on competent and admissible evidence. *Cox v. Amerigas Propane, Inc.*, No. CV-04-101-PHX-SMM, 2005 U.S. Dist. LEXIS 26344, at *5 (D. Ariz. Oct. 28, 2005) ("Evidence a party relies upon with respect to a summary judgment motion must have an appropriate foundation and must be supported or opposed by admissible evidence.").

Here, Plaintiff provides no specific circumstantial evidence to infer a defect existed in the subject RNPS. Instead, she summarily states, without record cites, that "the record in this case has plenty of evidence for a reasonable jury to find Defendants liable and hold them accountable for Z.O.'s death due to the defective design and warnings of the RNPS." (Pl.'s Opp., p. 21). To the extent Plaintiff is referring to her statement of facts, the evidence cited therein is muddied with a litany of irrelevant and/or inadmissible sources. These sources include: (1) positions taken by certain regulatory and private organizations in foreign countries; (2) positions taken by the AAP; and (3) and positions taken by the Consumer Product Safety Commission ("CPSC") after the recall of the

7

RNPS. But none of these sources provide *competent, admissible* evidence required to defeat summary judgment—and Plaintiff's Opposition fails to establish otherwise.[3]

First, positions taken by foreign regulatory and private organizations have no relevance to the subject RNPS that was sold and marketed in the U.S. There is no dispute that Plaintiff's RNPS and other inclined sleepers were subject to (and lawfully sold within) the regulatory scheme imposed by the CPSC, that she obtained the RNPS in the U.S., that the incident resulting in Z.O.'s death occurred in the U.S., and that she sued Defendants and alleges liability under state law within the U.S. Thus, any actions by any foreign regulatory or private bodies regarding the sale of the RNPS outside the U.S. are not relevant to this case and are inadmissible. *See, e.g.*, *Burns v. AstraZeneca Pharms. LP, (In re Seroquel Prods. Liab. Litig.)*, 601 F. Supp. 2d 1313, 1316 (M.D. Fla. 2009) (excluding evidence regarding foreign regulatory actions as irrelevant to the plaintiff's main case and prejudicial as it would cause jury confusion).

Second, positions expressed by the AAP and other scientific articles cited in Plaintiff's opposition do not support her defect allegations. While Plaintiff's statement of facts argues that the RNPS was not compliant with certain safe sleep guidelines, she fails to provide any specific excerpts from any of these guidelines stating that sleeping at a 30-degree incline, much less in the RNPS specifically, is unsafe. Instead, Plaintiff once again relies on the report and testimony of her proposed expert, Dr. Goodstein, whose purported testimony and opinions are the subject of a separate *Daubert* motion. (*See* Pl.'s Opp., p. 3). These statements and guidelines alone do not constitute the necessary competent circumstantial evidence required to overcome summary judgment as to her defect theories for the RNPS.

Finally, to the extent Plaintiff is proffering positions expressed by the CPSC *after* the 2019 voluntary recall of the RNPS as circumstantial evidence of a defect in the subject RNPS, such evidence is unreliable and inadmissible. Specifically, Plaintiff's statement

---

[3] Defendants reserve the right to move to preclude Plaintiff from referencing such material during trial via motions *in limine* at the appropriate time.

8

of facts attempts to provide circumstantial evidence based on a 2019 study commissioned by the CPSC, after the voluntary recall of the RNPS, conducted by Dr. Erin Mannen.[4] (Pl.'s Opp., pp. 17-19). Dr. Mannen is not a retained expert in this case. Nor is her report to the CPSC a peer-reviewed study. As a result, it falls far short of the affirmative, competent, and admissible evidence required to survive summary judgement.

### IV. Plaintiff Fails To Identify Any Affirmations Of Fact Or Promise By Defendants That Became "The Basis Of The Bargain" To Sustain Her Breach Of Express Warranty Claim.

Even if Plaintiff's express warranty claim was timely filed—which it was not—it fails on the merits. Plaintiff argues that her breach of express warranty claim survives summary judgement solely because "Defendants made affirmations about the safety of the RNPS as a sleeper for infants and described the RNPS in this manner sufficiently to become a basis of the bargain." (Pl.'s Opp., pp. 21-22). Plaintiff provides no factual support from the record to support this conclusory position. As discussed in Defendants' Motion, Plaintiff has failed to identify any packaging or advertisements that enticed her to purchase the actual RNPS model at issue in this case. (Dkt. 195, pp. 31-32). More importantly, Plaintiff admitted she has never seen any packaging or advertising of the RNPS from which an affirmation of fact or promise could even arise. (*Id.*) Indeed, she did not purchase the product at all—it was gifted to her. Accordingly, no affirmation of fact or promise can form the "basis of the bargain" in this case.

Plaintiff has failed to meet her burden to establish a *prima facie* case on her breach of express warranty claim. It therefore should be dismissed as a matter of law.

### V. Plaintiff Has No Proof That Defendants Acted With "An Evil Mind."

Assuming *arguendo* that one of Plaintiff's claims survive summary judgment, her punitive damages claim is still legally insufficient under Arizona law. Defendants demonstrated in their Motion that they acted appropriately, diligently, reasonably, and in

---

[4] Contrary to the wording in Plaintiff's Opposition, Dr. Mannen is not a medical doctor, but rather holds a Ph.D. in mechanical engineering. Her study involved intentionally placing babies *face down and unrestrained* in the product.

9

accordance with all applicable laws, rules, regulations, and guidance in designing, manufacturing, marketing, and selling the RNPS, including, the voluntary standards created by ASTM, and any rules, regulations, and guidance promulgated by the CPSC. Arizona courts set a stringent standard for punitive damages. In light of the competent evidence before the Court establishing Defendants' diligence in the design and manufacturing process, and adherence to all applicable safety regulations during the time the product was sold, Plaintiff has not met her burden of proving, by clear and convincing evidence, that Defendants acted in "outwardly aggravated, outrageous, malicious, or fraudulent conduct" with an "evil mind." *Volz v. Coleman Co., Inc.*, 155 Ariz. 567, 570-1, 748 P.2d 1191, 1194-5 (Ariz. 1987).

Plaintiff seeks a ruling in the contrary based on improper reliance on *Hess v. Bumbo Int'l Tr.*, No. CV 13- 944 TUC DCB, 2014 U.S. Dist. LEXIS 199387 (D. Ariz. Sep. 9, 2014). *Hess* involved a head injury to an infant after he fell from a Bumbo Seat. The injury occurred a year after a recall that resulted in new warnings advising consumers that children can escape from the seat and advising against placing the seat on raised surfaces, and four years before a second recall, resulting in the addition of restraints placed in the seat to prevent children from sustaining serious injuries. *Id.* at *2. The Court denied defendants' motion for summary judgment on the punitive damages claim because it "fail[ed] to test its product for the risk of head injury and the records of reported head injuries incurred by babies sitting in the Bumbo Seat on the floor," "continued to manufacture its product," and "refused to make the simple and cheap change of adding a seatbelt until it was required to do so in 2012 by the CPSC." *Id.* at *25.

Unlike the *Hess* defendants, and contrary to Plaintiff's assertions, Defendants here thoroughly tested and vetted the RNPS for purposes of safety, including in areas related to head/torso alignment, child positioning, safety of the angle for sleep, preventing entrapment, preventing the infant from pushing out the top of the product seat, placement of the restraints, and the breathability of the seat back and sides. (Defendants' Motion, Dkt. 195, pp. 8-9; *see also* Defendants' Statement of Facts, Dkt. 196, ¶ 19). And unlike

10

the Bumbo Seat, each RNPS sold included a build-in safety restraint system. Plaintiff's accusation that Defendants "failed to adequately test the RNPS with regard to the well-known and foreseeable hazards like efficacy of restraint belts and positional asphyxiation" is, therefore, baseless. Moreover, as Defendants' Motion explains, the design team looked for, and could not identify, any research indicating an incline angle of 30 degrees or less presented a hazard for infants. (Defendants' Statement of Facts, Dkt. 196, ¶ 13). Similarly, there were no standards or regulations that recommended against a 30-degree incline. (*Id.* at ¶ 14).

Plaintiff further misrepresents Defendants' actions in response to incident report data regarding injuries or deaths in the RNPS, by claiming that Defendants "ignored the deaths of many, many, children[.]" (Pl.'s Opp., p. 29). As a threshold matter, any claim for punitive damages must be based on information available to Defendants in 2014 at the time of the incident *in this case*—not based on reports or information learned years later. Moreover, throughout the RNPS's time on the market, Defendants closely monitored the safety of the RNPS via a large Consumer Services department, through which data was obtained regarding *any* adverse incident involving the RNPS and properly catalogued. (*See* Defs. Statement of Facts, Dkt. 196, ¶¶ 37-38). Every incident was carefully reviewed by Defendants' Safety Committee on a weekly basis and each incident involving a death was immediately reported to the CPSC. (*Id.*) This diligent review, investigation and reporting did not identify any causal relation between the product and the very small number of reported incidents, particularly relative to the large number of products sold and used safely by millions, and given the tragic prevalence of SIDS. More fundamentally, the Defendants' diligent safety process demonstrates does not support the finding of "an evil mind" or purposeful malicious behavior.

## **CONCLUSION**

For the reasons set forth herein and in Defendants' Motion for Summary Judgment, Defendants move this Court for an order granting their Motion in its entirety.

1     SUBMITTED this 7th day of February, 2022.

GREENBERG TRAURIG LLP

By: */s/ Aaron J. Lockwood*
    Lori G. Cohen*
    Mary-Olga Lovett*
    Brandon D. Cox*
    Nicole M. Goodwin
    Aaron J. Lockwood
    **Pro Hac Vice*
    *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**Certificate of Service**

I hereby certify that on February 7, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*


By: /s/ *Aaron J. Lockwood*
Greenberg Traurig, LLP