1  Nicole M. Goodwin (SBN 024593)
   Aaron J. Lockwood (SBN 025599)
2  **GREENBERG TRAURIG, LLP**
   2375 E. Camelback Road, Suite 800
3  Phoenix, AZ 85016
   Tel: (602) 445-8000
4  Facsimile: (602) 445-8100
   goodwinn@gtlaw.com
5  lockwooda@gtlaw.com

6  Lori G. Cohen *(pro hac vice)*
   Brandon D. Cox *(pro hac vice)*
7  **GREENBERG TRAURIG, LLP**
   3333 Piedmont Road NE, Suite 2500
8  Atlanta, GA 30305
   Telephone: (310) 553-2100
9  Facsimile: (310) 553-2212
   cohenl@gtlaw.com
10 coxb@gtlaw.com

11 Mary-Olga Lovett *(pro hac vice)*
   **GREENBERG TRAURIG, LLP**
12 1000 Louisiana Street, Suite 1700
   Houston, TX 77002
13 Telephone: (713) 374-3541
   Facsimile: (713) 754-7541
14 lovettm@gtlaw.com

15 *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE THE OPINIONS OF ERIK CHRISTENSEN, M.D.**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.    Plaintiff's Opposition Fails To Apply The Correct Standard For A Differential Diagnosis; Applying The Correct Standard Confirms That Dr. Christensen's Differential Diagnosis Is Unreliable. ..................... 2

        A.    Plaintiff's Opposition Fails to Fully Address Dr. Christensen's Inadequate Analysis of the Objective Post-Mortem Rigor Mortis and Lividity Scientific Evidence. .................................................. 2

        B.    Plaintiff's Opposition Does Not Explain Dr. Christensen's Failure to Adequately Address the SIDS Environmental Risk Factors and Two Medical Examiners' Conclusions that Z.O.'S Death Was Consistent With SIDS. ................................................................. 4

        C.    Plaintiff's Opposition Does Not Explain Dr. Christensen's Failure to Account for the Conflicting Statements Regarding Z.O.'S Position When She Was Found. ........................................ 6

        D.    Plaintiff's Opposition Mischaracterizes Defendants' Argument Regarding Dr. Christensen's Improper Reliance on the Unidentified Stain. ................................................................ 6

    II.    Dr. Christensen Admitted He Is Not Qualified To Opine On AAP Standards. ..................................................................................................... 8

    III.    Plaintiff's Opposition Attempts to Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Christensen From Offering Any Opinions On Which He Has No Expertise. ............................................. 8

CONCLUSION ............................................................................................................... 9

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

i

Defendants Mattel, Inc. and Fisher-Price, Inc., (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Evid. 702, submit this Reply to Plaintiff's Opposition to Defendants' Motion to Exclude the Opinions of Erik Christensen, M.D. ("Reply"). In support of this Reply, Defendants rely on the following Memorandum of Points and Authorities.

## INTRODUCTION

Under Rule 702, the Court acts as a "gatekeeper" to first determine whether an expert is qualified; then the Court determines whether an expert's proposed opinions are reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993). Rather than address these fundamental points, Plaintiff's Opposition to Defendants' Motion to Exclude the Opinions of Erik Christensen, M.D. ("Opposition") spends a great deal of space asserting that Dr. Christensen's faulty analysis involves "issues of material fact." (*See e.g.,* Pl.'s Opp. at 6–7, 14–15). But as this Court well knows, the legal standard on a *Daubert* motion is not whether particular facts are contested but whether—consistent with the Court's gatekeeper role—the opinions are medically and scientifically reliable. As Dr. Christensen's analysis of the cause of Z.O.'s death does not meet Rule 702's standards of reliability his testimony and opinions must be excluded.

The Ninth Circuit has outlined the specific process a proposed expert must follow when making a differential diagnosis for that expert's opinions to be admissible. Plaintiff cannot plausibly argue Dr. Christensen meets this standard, given the many pieces of evidence he either failed to consider at all, or gave only lip service to, which contradict his conclusion. For the reasons outlined in Defendants' Motion to Exclude the Opinions of Erik Christensen, M.D. ("Motion") and this Reply, all of Dr. Christensen's opinions and testimony should be excluded because they fail to satisfy Rule 702 and *Daubert*.

# ARGUMENT

## I. Plaintiff's Opposition Fails To Apply The Correct Standard For A Differential Diagnosis; Applying The Correct Standard Confirms That Dr. Christensen's Differential Diagnosis Is Unreliable.

Plaintiff's Opposition fails to properly apply the standards for a reliable differential diagnosis set by this Court and the Ninth Circuit. (Pl.'s Opp., p. 4 (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014))). As noted in Defendants' Motion, a reliable differential diagnosis involves two primary steps: (1) the compilation of a "comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration," and (2) "engag[ing] in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057-58 (9th Cir. 2003). Here, while Dr. Christensen may have made passing references to alternative causes of Z.O.'s death, he utterly failed to adequately account for and eliminate other viable, likely theories.

### A. Plaintiff's Opposition Fails to Fully Address Dr. Christensen's Inadequate Analysis of the Objective Post-Mortem Rigor Mortis and Lividity Scientific Evidence.

While Plaintiff's Opposition claims that "Dr. Christensen did not disregard" scientific evidence about the objective post-mortem findings on Z.O.'s body that indicates she died face-up, the facts show otherwise. If Z.O. had been found face-down as Dr. Christensen asserts, her face or the front side of her body/torso would have shown lividity in those areas. But the Tempe Fire Department ("TPD"), which arrived at 8:06 a.m., just six minutes after Plaintiff allegedly found Z.O. unresponsive, did not note any lividity present on Z.O.'s face or the front side of her upper body. (Cert. Recs. Temp Police Dep't, at ZO-TempePD-000006, Ex. D to Motion). Instead, the TPD noted that Z.O. already had rigor present in her upper and lower extremities—suggesting that she had passed hours before—and some livor in her legs. (Cert. Recs. Tempe Fire Dep't, at ZO-TempePD-00001, Ex. C to Motion). When the ME investigator arrived at

approximately 10:00 a.m., he described rigor and lividity as "fixed," and the photographs taken of Z.O.'s body at the scene show significant lividity over her *posterior surface and back*—strong evidence showing Z.O. was in a supine position when she died, as Dr. Christensen himself acknowledged in his deposition. (*Id.*; E. Christensen, MD, Dep., at 171:6–14, 178:13-22, Ex. E to Motion).

Dr. Christensen ignored this evidence entirely in his original report and conveniently dismissed this evidence in his rebuttal report by claiming the medical examiner assessed Z.O. "three hours after her original discovery," speculating that moving Z.O.'s body disrupted the fixed lividity patterns. (Christensen Rebuttal report, at p. 5, Ex. F to Motion). Although Dr. Christensen states "[t]here can be no definitive conclusions drawn about her position" based on these lividity patterns, he fails to cite a single source to support this statement. (*Id.*) The objective, physical rigor and lividity evidence of the TPD's first-on-the-scene observations and the ME investigator's analysis contradict Dr. Christensen's conclusions. Dr. Christensen never provides a scientifically reliable explanation to reconcile this inconsistency with his positional asphyxia conclusion other than his own say so, rendering his opinion unreliable *ipse dixit*.

Plaintiff's Opposition next attempts to cherry-pick lividity evidence, stating that "Defendants ignore the fact that Z.O. 'clearly ha[d] lividity in both the front and back of her legs.'" (Pl.'s Opp., p. 9 (citing E. Christensen, MD, Dep., at 136:2-4, Ex. E to Motion). Plaintiff then surmises that this "is evidence that the front of her legs were lower in terms of gravity than the back of her legs—i.e., in the prone position on an incline of 30 degrees—when she died." *Id.* However, this evidence further supports Defendants' position that Z.O. was *not* prone at the time of her death. First, the lividity on Z.O.'s upper legs does not change the fact she had *no lividity* on her face or torso—areas of Z.O.'s body that Dr. Christensen opines had to be prone so as to result in positional asphyxia. And second, to the extent Plaintiff seeks to legitimize the existence of one area of Z.O.'s body with lividity, while ignoring the lack of lividity in the more pertinent areas

3

of her body, is further evidence of cherry-picking and the lack of reliability in Dr. Christensen's opinions.

**B.   Plaintiff's Opposition Does Not Explain Dr. Christensen's Failure to Adequately Address the SIDS Environmental Risk Factors and Two Medical Examiners' Conclusions that Z.O.'S Death Was Consistent With SIDS.**

Plaintiff's Opposition also misleadingly argues that Dr. Christensen fully accounted for the conclusion of the two medical examiners that Z.O.'s death was consistent with SIDS/SUID, when in fact Dr. Christensen's report did no such thing.

For example, the Opposition states that Dr. Christensen "specifically mentioned the findings at the scene, which included the presence of marijuana, smoking devices, and Andrew Olson's medical marijuana card." (Pl.'s Opp., at p. 13). This is illustrative of the approach taken in the Opposition—conflating the mere mention of factors that support an alternative explanation of Z.O.'s death with fully accounting for and eliminating the alternate cause of death. But simply listing potential risk factors is not sufficient. A reliable differential diagnosis requires that Dr. Christensen also "engage in a process of elimination" through a scientific "examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Clausen*, 339 F.3d at 1057-58. Here, however, Dr. Christensen did nothing to account for SIDS/SUID risk factors beyond simply noting their existence. (E. Christensen, MD, Dep., at 109:17-20, Ex. E to Motion; *see also* Andrew Olson Dep., at 212:17-19, Ex. I to Motion).

Similarly, Plaintiff's Opposition ignores the fact that Dr. Christensen failed to even mention that the home in which Z.O. died was 87 degrees at the time it was measured by the authorities, even though heat is a well-known SIDS/SUID risk factor. (E. Christensen, MD, Dep., at 114:17-21, Ex. E to Motion). Moreover, the Opposition makes the conclusory assertion that Dr. Christensen "did not have any reason to believe heat or a blanket were factors in her death" (Pl.'s Opp., at p. 13), despite the pictures taken on the day of Z.O.'s passing that showed blankets present in the RNPS—yet

4

another known risk factor for SIDS/SUID (E. Christensen, MD, Dep., at 185:14-17, Ex. E to Motion).

Additionally, Dr. Christensen ignored and did not consider that Z.O. had been hospitalized for an upper respiratory infection just a few months before she died, and in fact, had not even been provided with the records of this hospitalization. (*Id.* at 107:6-14). Although Plaintiff's Opposition attempts to explain this away by stating that Dr. Christensen's Report noted that Z.O. had "no residual effects" from the hospitalization, Dr. Christensen provided no source or analysis to support his conclusory dismissal of this factor potentially implicating cause of death. (Pl.'s Opp., p. 13).

Plaintiff's Opposition also attempts to obfuscate Dr. Christensen's failure to consider Z.O.'s constant raspy cough, fluid in her lungs at birth, and significant weight loss by citing "several medical professionals" other than Dr. Christensen. *See* (Pl.'s Opp. at p. 14). But the fact remains that these serious warning signs indicating likely alternative causes of death were not accounted for by Dr. Christensen. This further underscores that Dr. Christensen's did not properly conduct a differential diagnosis before leaping to his pre-determined conclusion that Z.O. died of positional asphyxiation.

Finally, Plaintiff's Opposition asserts that Investigator Swope and Dr. Ferenc reached their conclusions that Z.O.'s cause of death was "unknown" or consistent with SIDS/SUID without all the evidence Dr. Christensen considered. (Pl.'s Opp., p. 12). Yet *both* medical examiners confirmed at their depositions that they still believe, based on all of the evidence before them, that Z.O.'s death was consistent with SIDS or SUID.

In sum, Dr. Christensen never provided a scientifically-reliable explanation to discount potential causes of Z.O.'s death other than his pre-determined conclusion. Once again, Dr. Christensen neglected to "'provide reasons for rejecting alternative hypotheses using scientific methods and procedures,'" *Heck*, 2006 WL 2460917 at *10 (quoting *Clausen*, 339 F.3d at 1058), and instead "focuse[d] only on support for his own theory." *Id.* at *10.

5

### C. Plaintiff's Opposition Does Not Explain Dr. Christensen's Failure to Account for the Conflicting Statements Regarding Z.O.'S Position When She Was Found.

Plaintiff's Opposition also attempts to distract from Dr. Christensen's failure to adequately account for conflicting statements regarding Z.O.'s position at death by arguing that this is simply a "weight of the evidence" issue. (Pl.'s Opp., at p. 14). But for Dr. Christensen's positional asphyxia theory to be valid, Z.O. must have died in the face-down or semi-prone position. This is not simply a matter to be left to the factfinder but a crucial prerequisite underlying Dr. Christensen's entire conclusion. Yet Dr. Christensen conveniently relies exclusively on certain of Plaintiff's and Mr. Olson's statements that Z.O. was found face-down or semi-prone, while completely ignoring the scientific evidence discussed above that suggests Z.O. in fact died face-up, and Plaintiff's and Mr. Olson's own contradictory statements about the position in which they found Z.O. For example, Dr. Christensen ignores that one of the officers on the scene noted that he was told by Plaintiff contemporaneously that Z.O. was found "still on her back," suggesting she was in fact face-up when she died. (Christensen Report, at p. 4, Ex. A to Motion).

Thus, once again, Dr. Christensen's purported differential diagnosis failed to account for critical empirical evidence, demonstrating that his cause of death opinion is unscientific, unreliable, and should be excluded.

### D. Plaintiff's Opposition Mischaracterizes Defendants' Argument Regarding Dr. Christensen's Improper Reliance on the Unidentified Stain.

Plaintiff's Opposition mischaracterizes the argument in Defendants' Motion regarding Dr. Christensen's faulty analysis of an unidentified stain on the RNPS. (Pl.'s Opp. at p. 15). The Motion did *not* state that Dr. Christensen was the only person to note the stain, as the Opposition claims, but rather that the stain was *never tested* to determine what it was or how long it had been on the RNPS. (Defs.' Motion at p. 11). Given this lack of testing, Dr. Christensen's scientifically untested conclusion that the stain must be

a bloodstain from Z.O. and proves she suffocated from the fabric of the RNPS while in the face-down or semi-prone position is improper as it lacks the requisite scientific or medical certainty. Yet again, Dr. Christensen failed to follow proper differential diagnosis procedure as he never explained how he considered and ruled out other potential causes of the stain. And he never attempted to test the stain on the product to determine whether such testing could confirm or support his position.

In sum, Dr. Christensen utterly failed to conduct a proper differential diagnosis and "eliminat[e] each of these potential causes until reaching one that cannot be ruled out" as required under Ninth Circuit case law. *Clausen*, 339 F.3d at 1057; *Alsadi*, No. CV-16-03738-PHX-DGC, 2019 WL 4849482, at *5–9; *Heck*, No. CV 04-1810-PCT-NVW, 2006 WL 2460917, at *14–15. While it is true that Dr. Christensen *mentioned* a number of other potential causes of Z.O.'s death, he failed in his obligation to *eliminate* these "alternative hypotheses using scientific methods and procedures." *Heck*, 2006 WL 2460917 at *10 (quoting *Clausen*, 339 F.3d at 1058); *see also Alsadi*, No. CV-16-03738-PHX-DGC, 2019 WL 4849482, at *5.

As if to emphasize this point, Dr. Christensen, in the last sentence of his Report, states that "an asphyxia component . . . cannot be excluded." (Christensen Report, at pp. 5—6, Ex. A to Motion). This revealing sentence demonstrates how Dr. Christensen flipped his differential diagnosis analysis on its head. Instead of listing each potential cause of death and then "one by one crossing them off until the most likely cause is left," Dr. Christensen simply ignored the other causes on the list and decided that, because he did not cross off asphyxiation, that was good enough to support his pre-determined conclusion. This misplaces the burden and is flatly contrary to the established differential diagnosis standards of *Alsadi*, *Heck*, and *Clausen*. *Heck*, No. CV 04-1810-PCT-NVW at *14; *see also Alsadi*, No. CV-16-03738-PHX-DGC at *9; *Clausen*, 339 F.3d at 1058. Thus, this Court should exclude Dr. Christensen's cause of death conclusion as unreliable under Rule 702.

## II. Dr. Christensen Admitted He Is Not Qualified To Opine On AAP Standards.

Contrary to the assertions in Plaintiff's Opposition, Dr. Christensen is not qualified to opine on American Association of Pediatrics ("AAP") standards, *as Dr. Christensen himself admitted* in his deposition: "Q: '[y]ou are not an expert in pediatrics; correct?' Dr. Christensen: 'No.' . . . Q: 'Nor are you telling the jury that you're an expert on the American Association of Pediatrics and its guidelines?' Dr. Christensen: 'No.'" (E. Christensen, MD, Dep., at 38:12-15; 38:25-39:3, Ex. E to Motion). He therefore lacks the required knowledge, skill, experience, training, or education to testify about AAP standards, and under Rule 702 and *Daubert* his purported opinions and testimony on this topic should be excluded.

## III. Plaintiff's Opposition Attempts to Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Christensen From Offering Any Opinions On Which He Has No Expertise.

The Plaintiff's Opposition puts forth the extraordinary and legally erroneous assertion that "[t]his Court should not preemptively exclude Dr. Christensen from testifying to any topics." (Pl.'s Opp., p. 17). This is diametrically opposed to the judicial role assigned to this Court under Rule 702, which "imposes a special gatekeeping obligation upon a trial judge to make a preliminary assessment of the admissibility of expert [] testimony." *Contreras v. Brown*, CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see also Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) ("In exercising this gatekeeping function, a court must determine that the experts are qualified, that their opinions are reliable, and that their testimony fits the case.").

Dr. Christensen expressly disclaimed having expertise in several areas upon which both his original and rebuttal reports ostensibly touch, admitting under oath that he has no engineering expertise, collected no data on the RNPS, and will not opine that a specific defect in the RNPS proximately caused Z.O.'s death. (E. Christensen, MD, Dep. at 43:11-15; *see also* 41:23-25; 42:8-13, Ex. E to Motion). Furthermore, he admits he is not an

expert in the areas of pediatrics, pulmonology, neonatology, infant safe sleep practices, sleep medicine, the AAP and its guidelines, the Consumer Product Safety Commission standards (including those for incline infant sleep products), and human factors or warnings and labeling. (*Id.* at 38:12-39:13; 41:4-22). Thus, Dr. Christensen should not be permitted to testify on any of these subjects by virtue of his own admissions and testimony, and in accordance with the gatekeeping role of this Court.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court grant the Motion and this Reply, exclude the opinions and testimony of Dr. Christensen, and grant all other relief to which Defendants may be entitled.

RESPECTFULLY SUBMITTED this 7th day of February 2022.

GREENBERG TRAURIG LLP

By: */s/ Aaron J. Lockwood*
    Lori G. Cohen*
    Mary-Olga Lovett*
    Brandon D. Cox*
    Nicole M. Goodwin
    Aaron J. Lockwood
    **Pro Hac Vice*
    *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

9

**Certificate of Service**

I hereby certify that on February 7, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*

By:   */s/ Aaron J. Lockwood*
        Greenberg Traurig, LLP

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000