Nicole M. Goodwin (SBN 024593)
Aaron J. Lockwood (SBN 025599)
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 445-8000
Facsimile: (602) 445-8100
goodwinn@gtlaw.com
lockwooda@gtlaw.com

Lori G. Cohen *(pro hac vice)*
Brandon D. Cox *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
cohenl@gtlaw.com
coxb@gtlaw.com

Mary-Olga Lovett *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
lovettm@gtlaw.com

*Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE PLAINTIFF'S EXPERT, MICHAEL GOODSTEIN, M.D.**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.     Plaintiff Concedes Dr. Goodstein Is Not Offering Causation Opinions. ...............2

    II.    Dr. Goodstein's Opinions Are Unreliable Because He Failed To Consider Several Factors At The Direction Of Counsel, And Therefore Should Be Excluded. ................................................................................................................3

    III.   Dr. Goodstein's Purported "Safe Sleep" Opinions Should Be Excluded Because They Will Not Assist The Trier Of Fact In This Case. ............................6

    IV.   Plaintiff's Failure To Timely Disclose Dr. Goodstein's Opinions About Rebreathing Violates Rule 26(A) And Is Not Substantially Justified Or Harmless. ...............................................................................................................7

    V.    Plaintiff's Opposition Attempts To Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Goodstein From Offering Any Opinions On Which He Has No Expertise. ..........................................................8

CONCLUSION ...............................................................................................................................9

## INTRODUCTION

Plaintiff bears the burden to establish that Dr. Goodstein's opinions are admissible. Plaintiff's Opposition makes clear that she cannot meet this burden. Plaintiff spends the first five pages of her Opposition on issues unrelated to Defendants' Motion, first reciting Dr. Goodstein's qualifications (even though this was not a basis of Defendants' Motion) and then explaining how Dr. Goodstein's deposition testimony was not great because this was his very first deposition and Defendants' counsel's questions were difficult and challenging. When Plaintiff finally gets into the merits of Defendants' Motion, she primarily attempts to defend Dr. Goodstein's flawed methodology and inadmissible opinions by wrongly claiming Defendants misrepresented his testimony in their Motion. But Dr. Goodstein's testimony speaks for itself, and nothing in Plaintiff's Opposition saves Dr. Goodstein's opinions from exclusion. In addition to the reasons listed in Defendants' Motion, the Court should exclude Dr. Goodstein's opinions for the following reasons.

First, Plaintiff concedes Dr. Goodstein is not offering any opinions related to causation or what caused or contributed to the death of Z.O. Rather, Dr. Goodstein relies on the causation opinions of Plaintiff's expert pathologist, Dr. Erik Christensen. Because Dr. Goodstein's causation "opinions" simply parrot those of Dr. Christensen, Dr. Goodstein should be precluded from offering any causation opinions in this case.

Second, Plaintiff's Opposition highlights Dr. Goodstein's flawed and unreliable methodology on his limited SIDS/SUID analysis related to Z.O. Plaintiff concedes that Dr. Goodstein's written report fails to comply with Rule 26 of the Federal Rules of Civil Procedure as he admits it does not include a complete list of records, deposition transcripts, and other documents he purportedly reviewed and considered as required by Rule 26. (*See* Pl.'s Opp., pp. 10-11). When faced with these shortcomings in his report, Dr. Goodstein merely testified that his opinions regarding Z.O.'s risk for SIDS/SUID are derived from what Plaintiff's counsel "told him to include." Accordingly, Dr.

Goodstein's opinions regarding Z.O.'s exposure to SIDS/SUID should be excluded for lack of reliability.

Third, any opinions Dr. Goodstein attempts to provide regarding the AAP's safe sleep recommendations, the intent of those recommendations, the Rock 'n Play Sleeper's lack of compliance with those recommendations, and Z.O.'s health before the incident should be excluded for lack of relevance. None of these "opinions" will assist the trier of fact in this case in answering the pertinent inquiry: whether any alleged defect in the Rock 'n Play Sleeper caused Z.O.'s death.

Fourth, Plaintiff failed to timely disclose Dr. Goodstein's new rebreathing opinions, resulting in prejudice to Defendants. For this reason, this new opinion should be excluded as untimely. Plaintiff's Opposition fails to show otherwise.

Last, Plaintiff's Opposition concedes Dr. Goodstein lacks expertise in pathology, neuropathology, engineering, epidemiology, statistics, biostatistics, Consumer Product Safety Commission ("CPSC"), and Juvenile Products Manufacturers Association ("JPMA") rules, standards, and regulations. (*See* Pl.'s Opp. at 17). As such, this Court should exclude all of Dr. Goodstein's opinions on any of these topics.

## ARGUMENT

### I.   Plaintiff Concedes Dr. Goodstein Is Not Offering Causation Opinions.

Plaintiff admits Dr. Goodstein will not provide any case-specific opinions related to causation. (Pl.'s Opp., p. 12). Dr. Goodstein does not even know which Rock 'n Play Sleeper model is at issue to properly make this opinion. (M. Goodstein, MD, Dep., at 128:20-21, Ex. C to Motion). Plaintiff seeks to circumvent these admissions by stating "Dr. Goodstein can properly rely upon the opinions of Plaintiff's other experts in their respective areas of expertise, including Dr. Christensen's opinions regarding the application of potential extrinsic risk factors for SIDS/SUID to Z.O.'s pathology and cause of death." (Pl.'s Opp. at 7-8). However, a "testifying expert's opinion must be excluded only if that expert is just parroting the opinion of that other expert rather than formulat[ing] his own opinion." Wright & Miller, *Federal Practice and Procedure* §

2

6274 at 350. "Where the soundness of the underlying expert judgment is in issue, the testifying expert cannot merely act as a conduit for the underlying expert's opinion. Moreover, more scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (quotation marks, citation, and brackets omitted).

While an expert may rely on another expert's opinion, this is only permissible "if other evidence supports his opinion and *the record demonstrates that the expert conducted an independent evaluation of that evidence*." *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (emphasis added). Plaintiff's Opposition makes clear that Dr. Goodstein did not conduct an independent evaluation of the evidence. In fact, Dr. Goodstein did not consider a majority of the evidence as it relates to Z.O.'s death because he was not asked by Plaintiff's counsel to do so. (M. Goodstein, MD, Dep., at 100:1-6; 120:17-20; 175:2-4; 75:12-17; 232:23-25;233:1-15, Ex. C to Motion).

Dr. Goodstein seeks to merely parrot Dr. Christensen's opinions on causation and fails to provide any opinions regarding how any features of the Rock 'n Play Sleeper caused or contributed to Z.O.'s death. As such, Dr. Goodstein's opinions must be excluded as irrelevant and unhelpful to the trier of fact. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (excluding in part expert's declarations for unreliability where expert parroted another expert's evaluation and did not conduct his own assessments).

II. **Dr. Goodstein's Opinions Are Unreliable Because He Failed To Consider Several Factors At The Direction Of Counsel, And Therefore Should Be Excluded.**

Dr. Goodstein's narrow opinion regarding Z.O.'s susceptibility to SIDS/SUID is unreliable and should be excluded. There is no dispute that Dr. Goodstein did not address extrinsic factors for SIDS/SUID in his expert report. (M. Goodstein, MD, Dep., at

3

100:10-13, Ex. C to Motion). Plaintiff's Opposition affirms this point. Although Plaintiff argues Dr. Goodstein generally addressed "several extrinsic risk factors" in his report, Plaintiff then claims that Dr. Goodstein does not have an obligation to consider purported "nonsensical 'risk factors'. . . [that] do not have any relevance whatsoever to a SIDS/SUID analysis." (Pl.'s Opp. at 6.) However, as outlined in Defendants' Motion, even Dr. Goodstein disagrees with Plaintiff's argument as he acknowledged the importance of extrinsic risk factors in a SIDS/SUID analysis discussed in medical and scientific literature. (M. Goodstein, MD, Dep. at 100:10-13; 120:21-121:8, Ex. C to Motion).

Plaintiff argues Dr. Goodstein's opinions are not impacted by the failure to analyze extrinsic risk factors because he considered the "relevant" risk factors and concluded they had no bearing on causation in this case. (Pl.'s Opp. at 8-9). However, even Dr. Goodstein disagrees with this position as he testified that extrinsic risk factors are "important" in analyzing a death consistent with SIDS/SUID and he would "take issue" with any article or report on SIDS/SUID that does not address extrinsic risk factors. (M. Goodstein, MD, Dep., at 100:10-13; 120:21-121:8, Ex. C to Motion).

When faced with the shortcomings of his report and opinions, Dr. Goodstein deflected by admitting that the methodology utilized in forming his opinions consisted of only what Plaintiff's counsel told him to do. (*Id.* at 175:12-17). He did not perform a complete SIDS/SUID analysis because he was not asked to do so. (*Id.*) He also testified that pertinent information like police records, medical examiner's records, and depositions of various investigative and medical examiner personnel were not relevant to his opinions because he was not providing any opinions related to causation. (*Id.* at 98:10-17) ("They weren't … relevant to the question I was asked to answer."). Dr. Goodstein's failure to consider and provide proper weight to these records renders any opinion regarding the role of SIDS/SUID in Z.O.'s death as unreliable. As such, all of Dr.

Goodstein's opinions related to causation and what caused or contributed to Z.O.'s death should be excluded.[1]

In a last-ditch attempt to explain away Dr. Goodstein's testimony, Plaintiff's Opposition claims that Dr. Goodstein's report and opinions should not be excluded because "he does not have any experience acting as an expert witness in litigation matters." (Pl.'s Opp. at 4). This is an odd argument, as the absence of prior experience is typically a strike against an expert, not a point in favor. Additionally, Plaintiff argues Defendants "took advantage of Dr. Goodstein's inexperience giving legal testimony" and the fact that he had "never before testified in a legal matter" to cast doubt on his opinions and testimony. (Pl.'s Opp. at 4-5).[2] This is, however, inaccurate, as Dr. Goodstein testified that this was *not* his first time serving as an expert or giving a deposition testimony. (M. Goodstein, MD, Dep. at 8:2-6, Ex. C to Motion). Plaintiff also disregards the fact that Dr. Goodstein was represented by Plaintiff's counsel during his deposition. Plaintiff's counsel had ample opportunity to engage in a re-direct examination of Dr. Goodstein to clarify any inaccuracies in his testimony, but chose not to do so. Regardless, whether Dr. Goodstein is an experienced legal expert witness should not change his

---

[1] Plaintiff also concedes Dr. Goodstein's expert reports fail to list "a complete statement of all opinions [he] will express and the basis and reasons for them," the "facts or data considered by [him] in forming them," or "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii), (iii). Specifically, the reports failed to include a complete list of records, deposition transcripts, and other documents he purportedly reviewed and considered as required by Rule 26. (*See* Pl.'s Opp., pp. 10-11). Defendants are entitled to obtain a list of materials that Dr. Goodstein relied upon in forming his opinion. Fed. R. Civ. P. 26(a)(2)(B). Dr. Goodstein's deficient report has deprived Defendants of a fair opportunity to rebut his anticipated opinions at trial and should be excluded for that reason as well. Fed. R. Civ. 37(c)(1) (establishing that a party cannot use information it failed to disclose); *see also Whiting v. Hogan*, No. 12-CV-08039-PCT-GMS, 2013 U.S. Dist. LEXIS 69604, at *3 (D. Ariz. May 16, 2013) (Snow, J.) (striking plaintiff's experts for failure to timely comply with requirements of Fed. R. Civ. P. (a)(2)(B)).

[2] Plaintiff's Opposition further accuses Defendants' counsel of "badgering" the witness multiple times during his deposition, which is simply not true. Defendants' counsel disagrees with this inaccurate portrayal of the deposition and deny all suggestions that counsel's cross-examination was anything other than reasonable and appropriate.

5

methodology in reaching his opinions—i.e., what intrinsic or extrinsic risk factors to consider.

### III. Dr. Goodstein's Purported "Safe Sleep" Opinions Should Be Excluded Because They Will Not Assist The Trier Of Fact In This Case.

With respect to relevancy, any proffered expert testimony must assist the trier of fact in understanding a fact *at issue*. *Daubert*, 509 U.S. at 591. This helpfulness standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* The Supreme Court in *Daubert* discussed this test, which has aptly been described as one of "fit": "[S]cientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.* at 591 (citations omitted). Anticipating the difficulties courts would have in applying the helpfulness standard, the Supreme Court provided an example, which is particularly relevant here:

> The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night.

*Id.* at 592.

Here, the "pertinent inquiry" is whether an alleged defect in the Rock 'n Play Sleeper caused Z.O.'s death. Dr. Goodstein's general opinions, on the other hand, relate to AAP's safe sleep recommendations and the intent of those recommendations; what it means to have a firm and flat surface for infant sleep; and Z.O.'s health before the incident. (Pl.'s Opp. at 13). Dr. Goodstein also intends to opine that the Rock 'n Play Sleeper deviated from safe sleep recommendations. (Pl.'s Opp. at 12). However, Dr. Goodstein fails to assist the trier of fact in this case by providing any opinions as to *how* any purported deviations of the Rock 'n Play Sleeper from safe sleep recommendations caused or contributed to Z.O.'s death. Indeed, Plaintiff admits Dr. Goodstein will not provide any case-specific opinions related to causation, and Dr. Goodstein does not even

know which Rock 'n Play Sleeper model is at issue to properly make this opinion. (M. Goodstein, MD, Dep., at 128:20-21, Ex. C to Motion).

**IV.     Plaintiff's Failure To Timely Disclose Dr. Goodstein's Opinions About Rebreathing Violates Rule 26(A) And Is Not Substantially Justified Or Harmless.**

Dr. Goodstein's new opinion on rebreathing, offered for the first time at his deposition, was not properly disclosed in his expert report. For this reason, Dr. Goodstein's expert report is deficient under Rule 26(a)(2)(B), and the new opinion can be excluded on that basis alone. *See, e.g.*, Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."); *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 506 (D. Md. 1997) (discussing importance as to expert disclosures of "comply[ing] with all of the requirements for each component, or risk the adverse consequences of failing to do so," which "may well result in the exclusion of the testimony of the expert at trial, in whole or in part").

Plaintiff argues rebreathing was generally discussed in Dr. Goodstein's report and any new opinion should be allowed because there was no bad faith and there is sufficient time for defense experts to rebut the new opinion. (Pl.'s Opp. at. 15-16). Defendants disagree.

In *Krause v. Cty. of Mohave,* 459 F. Supp. 3d 1258 (D. Ariz. 2020), this district found prejudice where a plaintiff's expert "shared fresh conclusions that differed materially from his prior opinions" as to the mechanism of Plaintiff's injuries for the first time in his deposition "months after" the disclosure deadline. *Id.* at 1270. This left the defendants without the opportunity to rebut this expert's new opinions, meaningfully depose this expert on the new opinions, or suitably prepare for the expert's examination. *Id.* The Court correctly stated that "[i]t is the disclosing party's burden to provide timely, accurate, and sufficient Rule 26(a)(2)(B) disclosures." *Id.* at 1269. The Court then undertook a three step analysis to determine whether the untimely disclosure

7

of the new opinion was justified or harmless: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption at trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Id.* at 1270.

Here, as in *Krause*, Defendants' prejudice and surprise is self-evident. In the middle of a deposition, months after the scheduled deadline for both initial and rebuttal reports, Dr. Goodstein for the first time shared an opinion regarding the mechanism of rebreathing. This deprived Defendants' medical experts of the opportunity to rebut Dr. Goodstein's new opinion with expert testimony of their own. This also deprived Defendants the opportunity to meaningfully depose Dr. Goodstein on the new opinion, or suitably prepare for his examination. Additionally, Defendants had no opportunity to cure that prejudice. Dr. Goodstein's surprise testimony came on September 30, 2021, one day prior to the close of all discovery and months after Plaintiff's initial expert disclosure deadline. The capability of this new opinion to cause a disruption at trial is high as it presents a new theory as to the mechanism of Z.O.'s death. Finally, while Defendants do not impugn Plaintiff or Dr. Goodstein with respect to the "bad faith" inquiry, it is evident that his new opinion was formed based on facts, evidence, and data that was already in-hand at the time the original report was filed. This suggests that the untimely disclosure of this opinion was due to lack of diligence, rather than some factor outside of Plaintiff's control.

The *Krause* court excluded an untimely expert opinion because the plaintiff did not show that the error in belatedly disclosing an expert opinion was harmless. *Id.* The Court should reach the same conclusion here.

**V.  Plaintiff's Opposition Attempts To Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Goodstein From Offering Any Opinions On Which He Has No Expertise.**

Plaintiff's Opposition puts forth the extraordinary and legally erroneous assertion that "[t]his Court should not preemptively exclude Dr. Goodstein from testifying to any topics." (Pl.'s Opp., p. 17). This is diametrically opposed to the judicial role assigned to

8

this Court under Rule 702 which "imposes a special gatekeeping obligation upon a trial judge to make a preliminary assessment of the admissibility of expert [] testimony." *Contreras v. Brown*, CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see also Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) ("In exercising this gatekeeping function, a court must determine that the experts are qualified, that their opinions are reliable, and that their testimony fits the case.").

Plaintiff concedes Dr. Goodstein should not be permitted to testify on subjects outside of his expertise by failing to address Defendants' substantive argument on this issue. (*See* Pl.'s Opp. at 17). Plaintiff makes no attempt to justify Dr. Goodstein's lack of qualification or reliable methodology for any such opinions. Even Dr. Goodstein conceded he lacks expertise in pathology, neuropathology, engineering, epidemiology, statistics, biostatistics, and CPSC and JPMA rules, standards, and regulations. (Motion at 17; *See* Pl.'s Opp. at 17). Plaintiff agrees Dr. Goodstein will be offered as "an expert only in the areas for which Plaintiff has identified." (Pl.'s Opp. at 17). However, Plaintiff then contends exclusion of other opinions is premature and "should be addressed at trial"—without citing to any authority or support for such a baseless position. (*Id.*). Because Dr. Goodstein does not have any expertise or specialized knowledge in pathology, neuropathology, engineering, epidemiology, statistics, biostatistics, and CPSC and JPMA rules, standards, and regulations, all of Dr. Goodstein's opinions in those areas must be excluded now. *Krause*, 459 F. Supp. at 1266 (excluding an expert's opinion where the expert lacked experience and credentials revealed no specialized training).

## CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court grant this Motion, exclude the opinions and testimony of Dr. Goodstein, and grant all other relief to which Defendants may be entitled.

RESPECTFULLY SUBMITTED this 7th day of February, 2022.

GREENBERG TRAURIG LLP

By: */s/ Aaron J. Lockwood*
Lori G. Cohen*
Mary-Olga Lovett*
Brandon D. Cox*
Nicole M. Goodwin
Aaron J. Lockwood
*Pro Hac Vice*
*Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*

By: */s/ Aaron J. Lockwood*
Greenberg Traurig, LLP