Nicole M. Goodwin (SBN 024593)
Aaron J. Lockwood (SBN 025599)
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 445-8000
Facsimile: (602) 445-8100
goodwinn@gtlaw.com
lockwooda@gtlaw.com

Lori G. Cohen *(pro hac vice)*
Brandon D. Cox *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (310) 553-2100
Facsimile: (310) 553-2212
cohenl@gtlaw.com
coxb@gtlaw.com

Mary-Olga Lovett *(pro hac vice)*
**GREENBERG TRAURIG, LLP**
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 374-3541
Facsimile: (713) 754-7541
lovettm@gtlaw.com

*Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Courkamp, for herself and on behalf of other statutory beneficiaries,<br><br>Plaintiff,<br><br>v.<br><br>Fisher-Price, Inc., a foreign corporation; Mattel, Inc., a foreign corporation,<br><br>Defendants. | No. 2:19-cv-02689-GMS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF WILLIAM SINGHOSE, Ph.D.**<br><br>**ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    Plaintiff's Opposition Confirms That Dr. Singhose's Opinions Regarding the RNP's Design Lack A Reliable Methodology Because Dr. Singhose Never Tested His Opinions. ................................... 1

        A.    Dr. Singhose's Opinions Regarding the RNPS's Incline Lack a Reliable Methodology. ................................................................................ 1

        B.    Dr. Singhose's Opinion that the RNPS's Fabric Was Not Sufficiently Breathable is Scientifically Unreliable and Irrelevant. 4

    II.    Dr. Singhose's Opinion That Fisher-Price Did Not Test The RNPS During the Design Process Is Speculative, Unreliable, And Should Be Excluded. ............................................................................................. 5

    III.    Dr. Singhose's Opinion Regarding A Safer Alternative Design Is Not Based On Any Scientific Methodology. .............................................. 7

    IV.    Plaintiff's Opposition Attempts To Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Singhose From Offering Any Opinions On Which He Has No Expertise. ................................................ 8

CONCLUSION ...................................................................................................................... 9

OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

i

## INTRODUCTION

Plaintiff's Opposition fails to show that Dr. Singhose is qualified to offer expert testimony in this case pursuant to Federal Rule of Evidence 702. Plaintiff spends most of her Opposition arguing her ultimate positions in this case about the safety of the RNPS and that Defendants breached their duty of care. She spends very little time discussing how Dr. Singhose's opinions and methodology are reliable and admissible under Rule 702 and the principles of *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579 (1993), and makes only conclusory statements that Dr. Singhose's methodology was reliable. As is evident from Plaintiff's own Opposition, the majority of Dr. Singhose's work involved reading and summarizing reports and tests performed by others rather than offering his *own* testing, expertise, or opinion. No amount of argument can change the fact that Dr. Singhose did not do the type of work that would make this methodology reliable and his opinions helpful to the jury.

Plaintiff only seriously attempts to defend four opinions by Dr. Singhose: (1) that it would not have been as easy for babies to role in the RNPS if the RNPS had laid babies horizontal, instead of at an incline; (2) that the RNPS's fabric was not sufficiently breathable; (3) that Defendants did not test for certain safety hazards during the design process; and (4) that a safer alternative design exists. Plaintiff offers either no methodology or a flawed methodology to support each of these opinions, and therefore, Dr. Singhose's opinions should be excluded.

## ARGUMENT

**I.    Plaintiff's Opposition Confirms That Dr. Singhose's Opinions Regarding the RNP's Design Lack A Reliable Methodology Because Dr. Singhose Never Tested His Opinions.**

    **A.    Dr. Singhose's Opinions Regarding the RNPS's Incline Lack a Reliable Methodology.**

Dr. Singhose's opinions regarding the design of the RNPS should be excluded because he failed to use a reliable methodology to reach them. Plaintiff's Opposition fails to establish otherwise. Rather than describing in detail the methodology Dr. Singhose

1

followed to reach his conclusions about the design of the RNPS, Plaintiff spends the majority of her Opposition attempting to clarify what Dr. Singhose's opinions actually are, as they are not sufficiently clear in Dr. Singhose's various reports or in his deposition. (*See* Pl.'s Opp., at 3-8). Plaintiff also spends a significant portion of her Opposition on the *merits* of her case, which have no bearing on Rule 702 and *Daubert* issues. (*See id.*)

Plaintiff's limited discussion of the "methodology" Dr. Singhose employed to conclude that the incline of the RNPS renders the product defective and dangerous demonstrates the complete absence of a reliable methodology at all. Indeed, Plaintiff's Opposition demonstrates that all Dr. Singhose did was take a handful of measurements and then rely on the tests performed by others, which he claims show that babies could roll from the supine position to the prone or semi-prone position in the RNPS. (*Id.* at p. 7-8). In other words, Dr. Singhose's opinions relating to this alleged design defect primarily comprise a summary of the facts that may be presented at trial through the various witnesses and exhibits in this case. Such narrative testimony should not be permitted. *See Staub v. Breg, Inc.*, No. CV 10–02038–PHX–FJM, 2012 WL 1078335, at *3 (D. Ariz. Mar. 30, 2012) (prohibiting expert testimony where the expert simply reads documents that jurors may read and interpret for themselves).

Moreover, the tests on which Dr. Singhose bases his opinions only allegedly "show[] that babies could roll over in the RNPS." (Pl.'s Opp., at 7-8). But as Plaintiff's Opposition makes clear, "Dr. Singhose is *not* of the opinion that it is easier for babies to role in the RNPS than it would be on a flat crib, and Dr. Singhose has never claimed that the RNPS is defective *just* because the incline makes it easier for babies to roll." (*Id.* at 4) (emphasis in original). Tests demonstrating babies' ability to roll over in the RNPS are, therefore, of no consequence to Dr. Singhose's opinion. And Plaintiff offers no explanation of the methodology Dr. Singhose employed to get from Point A (that babies have rolled over in the RNPS) to Point B (that it would not have been as easy for babies to roll in the RNPS's hard, plastic shell if the RNPS had laid babies horizontally instead of at an incline). Dr. Singhose simply never tested or examined an infant's ability to roll

2

over on the horizontal plane he claims to be the safer sleep environment. (W. Singhose, PhD, Dep., at 365:18 – 366:6, Ex. B to Motion).

Instead, the only rolling test conducted by Dr. Singhose was a test of his own ability to roll on a flat surface. (Singhose Report at 19-21, Ex. A to Motion). The rolling abilities of Dr. Singhose, a 54-year-old man, cannot serve as the basis for his opinion that it is more difficult for infants to roll on horizontal surfaces than on inclined ones. Even so, Dr. Singhose never positioned himself at a 30-degree incline with a hard plastic shell to his back and attempted to roll. His opinion regarding this matter should be excluded, as it has no scientific basis.

In addition, Plaintiff does not identify a methodology to support Dr. Singhose's further logical leap that because a baby could roll over in the RNPS, the baby would become trapped with its face against the fabric. (*See* Pl.'s Opp., at p. 9). As Dr. Singhose admits, he never tested this theory. (W. Singhose, PhD, Dep., at 237:11–16, 366:7–12, 375:22–25, 380:22–25, Ex. B to Motion). Plaintiff claims that Dr. Singhose did not need to test this theory, and states that his opinion could be reached by using "basic principles of mechanical engineering." (Pl.'s Opp., at p 6). She then concludes vaguely that Dr. Singhose has "outstanding knowledge, education, and experience in mechanical engineering to examine the RNPS, its design drawings, Defendants' test protocols, Defendants' test results, and the vast other materials in this case with an educated eye, which he has done . . . ." Yet, she does not explain the examination performed, and her citations point not to specific excerpts of Dr. Singhose's reports and testimony but rather to the entirety of Dr. Singhose's opening report, his deposition transcript, and his rebuttal report. (*Id.*) The Court cannot perform its gatekeeping function properly if Plaintiff fails to provide an explanation of the very methodology the Court is tasked with analyzing.

Finally, in providing his opinions regarding the incline of the RNPS—for which he lacks a proper methodology—Dr. Singhose repeatedly states that there is a "design defect" in the product. (*See e.g.*, Singhose Report, at p. 29, 40, 41, Ex. A to Motion). Whether the RNPS suffers from a design defect, however, is a legal conclusion to be

3

determined at trial. As this Court is aware, "an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Staub*, 2012 WL 1078335, at *3. Therefore, Dr. Singhose should be prohibited from providing any testimony that constitutes an inadmissible legal conclusion, including testimony offered to conclude that the RNPS suffers from a defective design. *See McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 1208976, *6 (D. Ariz. Mar. 31, 2021) (prohibiting testimony by expert witness that includes the words "defective" or "defect.").

### B. Dr. Singhose's Opinion that the RNPS's Fabric Was Not Sufficiently Breathable is Scientifically Unreliable and Irrelevant.

Dr. Singhose opines that the fabric used in the RNPS was not sufficiently breathable. (Singhose Report at 41, Ex. A to Motion). As Plaintiff's Opposition confirms, Dr. Singhose's theory related to the breathability of the RNPS's fabric has not been reliably tested by him. Indeed, the only test he conducted was to press the fabric against his own face, not that of an infant leaning his or her face on fabric at the various angles that may be present if an infant is positioned in the RNPS in the prone or semi-prone position. (*Id.* at 44). This "test" is not based on a scientific methodology that is generally accepted in the scientific community. Without adequate testing, his opinions on the topic are not admissible. *See Martinez v. Terex Corp.*, 241 F.R.D. 631, 638 (D. Ariz. 2007) (where the plaintiff provided no indication that the opinion or theory offered by the plaintiff's expert regarding a product's improper design or a safer alternative has been tested, the Court found this cut against a finding of reliability). The burden is on the proponent to demonstrate that the expert opinion or theory is reliable. *Id.* Here, Plaintiff simply cannot meet her burden.

Finally, in her Opposition, Plaintiff argues that Dr. Singhose did not need to perform testing with infants on the fabric because he "reviewed, evaluated, and analyzed a multitude of real-world data . . . which demonstrates that babies were suffocating or nearly suffocating when their faces were pressed into the RNPS's fabric." (Pl.'s Opp., at

4

p. 11). In other words, Dr. Singhose simply concludes that because there have been instances of alleged suffocation incidents, that must mean the fabric is not breathable. He describes no methodology whatsoever for disregarding other possible causes for the alleged suffocation (if suffocation is even an accurate description of the incidents Dr. Singhose claims to have reviewed). Dr. Singhose's reliance on anecdotal evidence and his failure to consider other possible causes render his testimony unreliable. *See Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity."). Dr. Singhose's opinion regarding breathability should be excluded.

## II. Dr. Singhose's Opinion That Fisher-Price Did Not Test The RNPS During the Design Process Is Speculative, Unreliable, And Should Be Excluded.

Dr. Singhose opines that Defendants should have conducted additional testing on the RNPS before and after releasing the product on the market. (Singhose Report, at 50, 53, Ex. A to Motion). As a preliminary matter, Dr. Singhose provides no scientific basis for his opinion, and he fails to offer any explanations for why additional testing was needed at the times specified in his report, other than to point to Defendants' knowledge or state of mind. (*See e.g.*, Singhose Report, at p. 65, Ex. A to Motion ("Defendants knew it was a hazard . . . .")). However, Dr. Singhose may not offer testimony regarding Defendants' motive, intent, knowledge, or other state of mind. *See Johnson v. Wyeth LLC*, No. CV 10-02690-PHX-FJM, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (excluding expert testimony purporting to speak to the defendant's corporate intent, motive, and knowledge). Dr. Singhose also fails to specify any qualifications sufficient to permit him to provide expert testimony about when and what type of testing is necessary on infant products such as the RNPS. Plaintiff has not met her burden, and she instead once again focuses her Opposition making legal arguments claiming Defendants breached their duty of care. (Pl.'s Opp., at p. 13). Those ultimate legal issues are not relevant to the issues to be decided by the Court in ruling on Defendants' Motion.

5

Additionally, an expert witness cannot opine that a defendant breached a standard of care unless that standard exists. *Johnson*, 2012 WL 1204081, at *2. Because Plaintiff cannot point to any objective standard relied on by Dr. Singhose that required Defendants to perform additional testing, Plaintiff has not shown that Dr. Singhose's failure-to-test opinions are anything more than "subjective belief or unsupported speculation." *See id.* at *7 (concluding that the expert's failure to test opinions were unreliable and inadmissible because plaintiff could not identify any standard establishing that additional testing was necessary). If Dr. Singhose were permitted to testify that Defendants breached a duty of care—without ever properly identifying such a duty—it would set a dangerous precedent whereby an expert could attempt to hold a defendant to an unreasonable standard that could vary to fit the facts of each individual case. There must be some objective standard recognized by the relevant industry, and Dr. Singhose has not identified one here.

Plaintiff attempts to distinguish Defendants' cases on this issue without success. Plaintiff argues that *Johnson* and other cases cited by Defendants are distinguishable because they involve pharmaceutical products, and that the pharmaceutical industry is highly regulated while the RNPS market is not. Opposition at 14:9. But this distinction is a red herring. The relevant inquiry is not whether the RNPS is regulated by the Food and Drug Administration (the "FDA") or some other federal agency, but whether Dr. Singhose established a standard that required additional testing, which he did not. *See id*. at 7. Indeed, while the products are different in the cases cited by Defendants, the principle remains the same: an expert cannot opine that defendants breached a standard of care that does not exist. The defendants in Defendants' cited cases all successfully excluded the expert's opinion that defendants failed to act reasonably by not conducting additional tests of their product when no standard existed. *Johnson*, 2012 WL 1204081, at *7 ("An expert witness cannot opine that defendants breached a standard of care unless that standard exists."); *In re Prempro Pords. Liab. Litig. (Scroggin v. Wyeth)*, 2010 WL 5663003, *6 (E.D. Ark. Sept. 16, 2010) (excluding plaintiff's expert testimony that

6

"could only be a subjective opinion on what they believe Defendants *could have done* rather than what industry or governmental standards *require* them to do") (emphasis in original); *Hines v. Wyeth, LLC*, 2011 WL 2680842, *16 (S.D.W.V. July 8, 2011) ("Absent an objective, verifiable standard of care, [plaintiff's expert's testimony] amounts to nothing more than her own personal views."). The same is true here. Dr. Singhose failed to identify any objective standard requiring additional testing. Therefore, his opinion should be excluded.

Ultimately, while Plaintiff argues Dr. Singhose's opinions regarding the testing Defendants allegedly should have done is more than Dr. Singhose's *ipse dixit*, their arguments are unpersuasive. Dr. Singhose's primary basis for his opinion that testing was not adequate rests on the fact that Defendants conducted their own testing in 2018, (Pl.'s Opp. at 12), but that testing found no safety issues with the product so would have had no impact on design or development had it been completed earlier. Plaintiff claims that Dr. Singhose has done extensive research and analysis to support his opinion, yet she fails to identify the actual research. (*Id*. at 13). Dr. Singhose does not have a scientific basis for concluding that Defendants did not adequately test the RNPS, and thus his opinions on the issue of Defendants' testing should be excluded.

### III. Dr. Singhose's Opinion Regarding A Safer Alternative Design Is Not Based On Any Scientific Methodology.

Dr. Singhose's opinion that a bassinet is a safer alternative design compared to a RNPS is not relevant to this case. Dr. Singhose opines that bassinets provide utility equal to, or greater than, the RNPS, and therefore, it is his opinion that the utility of the RNPS is outweighed by the hazards presented. (Pl.'s Opp., at 16). However, the RNPS has unique features, and a bassinet is a completely different product with a completely different utility, and therefore cannot serve as the basis for an alleged alternative design.

Plaintiff falls short of identifying, with specificity, a safer alternative design in Dr. Singhose's report. She notes that Dr. Singhose compares the RNPS to "the commonly-used design alternative of an infant sleeper with a level and firm sleeping surface." (*Id*.

7

at p. 15). But just because a bassinet is allegedly a commonly-used alternative does not make it a safer alternative design. And while Defendants are well aware of what a "bassinet" is, the term is broad and can take on a host of meanings. Bassinets have many different designs and come in all shapes and sizes. Indeed, as noted by Dr. Singhose, some bassinets are designed with an inclined surface, the very design element he claims makes the RNPS dangerous and defective. (W. Singhose, PhD, Dep., at 52:25–53:2, Ex. B to Motion).

Most importantly, Plaintiff states, "even if Dr. Singhose does not present evidence of a safer alternative design at trial, it does not provide grounds to exclude his testimony under Rule 702 or any other Rule." (Pl.'s Opp., at 17). This makes no sense and attempts to completely sidestep *Daubert*'s gatekeeping function. If Dr. Singhose failed to test the RNPS, and he also failed to test his alleged safer alternative design, he should not be permitted to offer any opinion as to his untested alternative design theory at trial. The burden is on Plaintiff to demonstrate that the opinion proffered by her designated expert is reliable, which takes into consideration any testing that has been done on the theory. *Martinez*, 241 F.R.D. at 638. Here, Plaintiff has provided no indication that the opinion or theory offered by Dr. Singhose regarding a safer alternative has been tested, and his opinions are therefore subject to exclusion. *See id.*

**IV.  Plaintiff's Opposition Attempts To Improperly Usurp This Court's Gatekeeping Role To Preclude Dr. Singhose From Offering Any Opinions On Which He Has No Expertise.**

Plaintiff's Opposition puts forth the extraordinary and legally erroneous assertion that "[t]his Court should not preemptively exclude Dr. Singhose from testifying to any topics." (Pl.'s Opp., at p. 17). This is diametrically opposed to the judicial role assigned to this Court under Rule 702, which "imposes a special gatekeeping obligation upon a trial judge to make a preliminary assessment of the admissibility of expert [] testimony." *Contreras v. Brown*, CV-17-08217-PHX-JAT, 2019 WL 2080143, at *1 (D. Ariz. May 10, 2019); *Daubert*, 509 U.S. at 597; *see also Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d

763, 776 (D. Ariz. 2017) ("In exercising this gatekeeping function, a court must determine that the experts are qualified, that their opinions are reliable, and that their testimony fits the case.").

Dr. Singhose expressly disclaimed having expertise in several areas upon which both his original and rebuttal reports ostensibly touch, admitting under oath that he has no expertise in SIDS or SUID, infant product labels or warnings, infant product packaging, infant product marketing, accident reconstruction involving infant products, and legal standards. (Pl.'s Opp., p. 13). Dr. Singhose also admitted he is not an expert in the medical field and does not offer any medical causation opinions in this case. (*Id.* at 13–14). He further admitted it is not his "role" to provide an opinion as to the cause of Z.O.'s death, and admitted he is not offering an opinion that the RNPS's design makes it easier for an infant to rollover when compared to other sleep environments. (*Id.* at 14). Thus, Dr. Singhose should not be permitted to testify on any of these subjects by his own admissions and testimony, and in accordance with the gatekeeping role of this Court.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court grant the Motion, exclude the opinions and testimony of Dr. Singhose, and grant all other relief to which Defendants may be entitled.

RESPECTFULLY SUBMITTED this 7th day of February 2022.

                    GREENBERG TRAURIG LLP

                    By: */s/ Aaron J. Lockwood*
                        Lori G. Cohen*
                        Mary-Olga Lovett*
                        Brandon D. Cox*
                        Nicole M. Goodwin
                        Aaron J. Lockwood
                        **Pro Hac Vice*
                        *Attorneys for Defendants Mattel, Inc. and Fisher-Price, Inc.*

**Certificate of Service**

I hereby certify that on February 7, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

John E. Osborne
William C. Bacon
GOLDBERG & OSBORNE LLP
698 E. Wetmore Road, Ste. 200
Tucson, Arizona 85705
josborne@goldbergandosborne.com
wbacon@goldbergandosborne.com
*Attorneys for Plaintiff*

By:  */s/ Aaron J. Lockwood*
     Greenberg Traurig, LLP